BARBARA J. BOGGUESS *et al.*, Plaintiffs-Appellants, v. THE BOARD OF EDUCATION OF ROCK ISLAND SCHOOL DISTRICT NO. 41, ROCK IS- LAND COUNTY, Defendant-Appellee.

Third District   No. 3—84—0630

Opinion filed June 10, 1985.

Robert Deffenbaugh, of Drach & Deffenbaugh, P.C., of Springfield, for appellants.

James C. Franczek, Jr., and Andrea R. Waintroob, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiffs, Barbara J. Bogguess *et al.*, are the Rock Island Educational Paraprofessional Association (RIEPA) and 18 of its member teacher's aides, who appeal a decision of the circuit court of Rock Island County upholding a decision of the board of education of Rock Island School District No. 41 (board) to reduce their hours of employment by one hour per day during the 1982-83 school year.

RIEPA and the board entered into a collective bargaining agreement in 1981 which was to remain in effect through June of 1984. The agreement was subject to a review of economic issues in 1983. In August 1982, the board reduced the hours of 16 aides, including plaintiff Bogguess. The parties agree that no grievance was filed and further agree that the reduction was not discussed nor was it considered an issue in the renegotiations which were then in progress. A further reduction of hours as to the remaining aides took place in January 1983. A grievance was filed following this second reduction which ultimately led to this action. Between August and January the aides affiliated with the Illinois Educational Association.

The reduction by the board was apparently necessary because the district, as a result of an unexpected reduction in State and Federal aid, as well as a decline in tax revenues and an increase in health insurance costs, was facing a large deficit for the 1983-84 school year. The reduction in hours was made as an alternative to laying off several of the aides. The reduction was one of a number of steps taken by the district to meet its perceived financial crisis. It also reduced administrative positions and laid off 137 teachers. Seventy-five of the teachers remained without employment in 1983-84.

The plaintiffs challenge the alleged financial crisis by insisting that the evidence indicated there was in fact a $400,000 carryover from the 1982-83 school year to the following term. In addition, they argue that if there was indeed a financial crisis on the horizon, it went without mention at the time the renegotiations were con-

cluded in October 1982.

Article XIV of the agreement specified the hours of employment for full-time employees. The hours ranged from 25 hours per week to 8 hours per day, depending upon the job assignment and jobsite.

| | |
|---|---|
| "Full-time Pre-School | -- $6\frac{3}{4}$ hrs/day + $\frac{1}{2}$ hour lunch unpaid |
| Full-time Elementary | -- $6\frac{3}{4}$ hrs/day + $\frac{1}{2}$ hour lunch unpaid |
| Full-time Secondary | -- 7 hrs/day + $\frac{1}{2}$ hour lunch unpaid |
| Full-time Library | -- 25 hrs/week + $\frac{1}{2}$ hour lunch unpaid |
| Full-time T.E.C. Supervisor | -- 8 hrs/day + $\frac{1}{2}$ hour lunch unpaid." |

The salary schedule attached to the contract established an hourly rate of pay depending on the experience and education of the individuals involved. Taken together, these two portions of the contract were used to compute the amount of compensation an employee of the district could expect to receive.

The cuts represented a substantial reduction in the plaintiffs' compensation ranging from $12\frac{1}{2}\%$ to 15%.

In upholding the decision of the board, the circuit court believed that, in the absence of an agreement or statutory provision to the contrary, the power of the board to control the length of the workday or the workweek was absolute. While the court acknowledged that there was nothing in the collective bargaining agreement which authorized the board to reduce hours, it believed such authorization was unnecessary; that unless the agreement denied, expressly or impliedly, the board's right to control hours, it could do so with impunity.

The circuit court reasoned further that if the board was to be required to guarantee a specific number of hours per day or a set number of hours per week, there was language available to accomplish such a purpose.

Finally, the circuit court concluded that since there was no provision in article XIV which set out how many days the "hours per day" aides were to work or the number of weeks the "hours per week" aides were to work, there was no guarantee as to the total amount of their compensation.

While it is true that the plaintiffs not only seek to reverse the circuit court's decision but to recover back pay for work never performed, we believe the issue as to whether the board breached its

contract with the plaintiffs must be resolved by the language of the agreement rather than by looking at the possible impact of an adverse decision or whether the financial crisis envisioned by the board was more imaginary than real.

Under the terms of the agreement, there can be no doubt that a reduction in hours conflicts with the specific provisions of article XIV.

While article XIV may not have guaranteed the number of days or weeks the employees were to work, the number of hours per day or week for work was specifically set out in the agreement. The board did not seek to cut back the days or weeks which were arguably susceptible to being manipulated, but instead chose to reduce the hours specifically set out in the agreement. This it could not do. (*Board of Education v. Ballweber* (1983), 96 Ill. 2d 520, 451 N.E.2d 858; *Libertyville Education Association v. Board of Education* (1977), 56 Ill. App. 3d 503, 371 N.E.2d 676.) Article XVII(c), while reserving some management rights to the board, specifically provided that "any decision made by the employer shall not conflict with the specific terms of this Agreement."

We are unpersuaded by defendant's attempt to utilize arbitration precedents to govern our decision. Such authorities are not binding upon our decision, and the lack of a "guaranteed" workweek does not change the clear language of the agreement, which set out the number of hours per day or week each employee could rely on. The clear and unambiguous language of the agreement was all the guaranty the plaintiffs needed.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed and this case is remanded for further proceedings consistent with this decision.

Reversed and remanded.

HEIPLE, P.J., and STOUDER, J., concur.