BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES, on behalf of Northeastern Illinois University, Petitioner, v. ILLINOIS EDU-CATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—87—0486

Opinion filed June 9, 1988—Rehearing denied July 7, 1988.

464

Edward B. Miller and Kenneth R. Dolin, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, and Mark T. Dunn, of Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County and Municipal Employees.

Richard J. Coffee II, of Illinois Board of Regents, of Springfield, for *amicus curiae* Board of Regents of Regency Universities System.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for *amicus curiae* Southern Illinois University.

Gregory J. Malovance, of Winston & Strawn, of Chicago, for *amicus curiae* Illinois Education Association.

JUSTICE McCULLOUGH delivered the opinion of the court:

The Board of Governors of State Colleges and Universities on behalf of Northeastern Illinois University (BOG) appeals a finding of the Illinois Educational Labor Relations Board (Board). The Board found the BOG had committed an unfair labor practice by refusing to process a grievance over an employee discharge. (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5).) The BOG argues: the Board erred in concluding the bargaining agreement provides for binding arbitration; the Board erred as a matter of law in finding discharge disputes were grievable; principles of *res judicata* require deference be given to the decision of the Merit Board of the State Universities Civil Service System (Merit Board) (Ill. Rev. Stat. 1985, ch. 24½, par. 38b3); and the remedial order in the instant case was inappropriate.

We affirm in part and vacate in part.

On February 21, 1985, Northeastern Illinois University filed

charges for the discharge of Shellie Brown. On February 28, 1985, Brown filed a Step III grievance. On March 1, 1985, Northeastern Illinois University returned the grievance to Brown, informing her that her only option was to appeal her discharge through the Merit Board. On March 1, 1985, Brown sent a letter to the Merit Board requesting a hearing to contest her discharge.

On March 22, 1985, and April 19, 1985, a hearing was held pursuant to the State University Civil Service System. The hearing officer's report of the March 22 hearing states in part:

> "In the middle of [a witness'] testimony the hearing was recessed for lunch. After the lunch break, Mr. Pomeranz [attorney for Brown] stated that for the first time he had discovered in discussions with his client Shellie L. Brown that she had filed a grievance (which was rejected by the University) attempting to bring the matter of her discharge under the grievance and arbitration provisions of the collective bargaining agreement between the Board of Governors of State College and University on behalf of Northeastern Illinois University and Council 31 of AFSCME. Mr. Pomeranz then moved to terminate the instant hearing on the theory that the instant hearing was premature and was without jurisdiction because the collective bargaining grievance procedure should take precedence.
>
> After much discussion, Mr. Pomeranz's motion was denied."

The hearing officer for the Merit Board found the university had shown cause for discharge in that Brown either misappropriated or was negligent in accounting for three tuition payments made by students. The hearing officer noted that neither Brown nor her counsel presented evidence and Brown's counsel stated he thought the grievance procedure should be exercised prior to the civil service procedure.

On March 25, 1985, the American Federation of State, County and Municipal Employees (AFSCME), Brown's collective bargaining representative, filed an unfair labor practice charge against the BOG pursuant to section 14 of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5)). A complaint issued on June 11, 1985. An amended complaint issued on June 13, 1985. The amended complaint alleged the BOG had committed an unfair labor practice by refusing to process Brown's grievance. Therefore, the BOG failed to bargain in good faith. Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5).

On August 21, 1985, a hearing on the unfair labor practice charge

was held. The parties submitted a copy of the collective bargaining agreement. Article VI provides:

"Section 1. Grievance

A. A grievance is defined as any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of this Agreement.

B. Grievances may be processed by the Union on behalf of an employee or on behalf of a group of employees or itself."

The agreement also states that either the employer or union may refer an unresolved grievance to arbitration. The decision of the arbitrator shall be final and binding on the parties. Article XI provides:

"Section 1. Definition

The Employer agrees with the tenets of progressive and corrective discipline. Disciplinary action or measures shall include only the following:

a) Oral Reprimand;

b) Written Reprimand;

c) Suspension (notice to be given in writing); and

d) Discharge (notice to be given in writing).

Disciplinary action may be imposed upon an employee only for just cause."

Article XXIII provides:

"AUTHORITY OF THE CONTRACT

* * *

Section 2.

This Agreement shall be considered to incorporate, except as otherwise provided herein, the Rules and Regulations of the State Universities Civil Service System of Illinois; the Rules and Regulations of the State Universities Retirements System; and the Civil Service Employee Regulations of the Board of Governors of State Colleges and Universities."

Alan Joel Schunk, employee relations coordinator for the BOG, testified that he participated in negotiating the instant contract. The definition of grievance was extensively discussed by the negotiating teams. AFSCME initially proposed a definition of grievance which would include disputes arising out of the agreement and other circumstances of employment. The BOG rejected the proposal as it wanted to limit grievances to applications and interpretations of the agreement. On October 13, 1983, an AFSCME negotiator stated AFSCME wanted to be able to grieve civil service rules, regulations, and policies. Schunk told AFSCME there was no agreement on this issue.

The BOG made a counterproposal of an informal complaint system. A complaint would not be considered a grievance and would thus not be arbitrable. AFSCME rejected the proposal immediately. AFSCME then submitted a proposal which included additional language talking about Federal and State laws. Schunk stated this definition was narrower than the previous one; however, the BOG rejected it. An AFSCME proposal which stated the agreement would supersede other laws was also rejected. A grievance definition offered by AFSCME which included civil service rules was also rejected.

Schunk stated that he proposed incorporating the rules and regulations of the civil service system into the agreement in the authority to contract section. Therefore, the broad definition of grievance could be dropped. The union agreed and withdrew its previous definition of a grievance.

Schunk further stated that the negotiators did not discuss discharge procedures either in connection with the grievance procedure or in connection with civil service rules. AFSCME did not propose procedures for reviewing discharges. No AFSCME representative stated that he understood discharge for cause would be grievable. Schunk believed incorporating the rules of the civil service commission would allow an employee to grieve the application of a rule but not its content.

On cross-examination, Schunk stated that the scope of the arbitration and the scope of the grievance clause could be different. Restricting arbitration is in management's interest because of a lack of control over the arbitrator. In the instant case, Schunk believed both sides felt the arbitration clause was as broad as the grievance clause. When he agreed to the just cause provision in article XI, Schunk knew that many of the provisions supplemented civil service rules. He did not understand that article XI would supplement civil service rules with respect to reviewing discharges. Schunk stated that he understood that all other forms of discipline were subject to the grievance procedure and ultimately to arbitration.

The hearing officer found the BOG and AFSCME had contractually agreed to arbitrate discharges, that the provision was valid and enforceable under the Act as supplementing an employee's rights, and concluded the BOG had violated sections 14(a)(1) and 14(a)(5) of the Act. She recommended the Board order the BOG to process Brown's grievance pursuant to the collective bargaining agreement, despite the time factors. *Board of Governors*, 2 Pub. Employee Rep. (Ill.) par. 1102, case No. 85—CA—0027—C (Illinois Educational Labor Relations Act, Aug. 14, 1986) (hearing officer).

On June 23, 1987, the Board adopted the hearing officer's recommended order. It based its decision on the language of the agreement, the presumption of arbitrability, and its interpretation of the relevant statutes. *Board of Governors*, 3 Pub. Employee Rep. (Ill.) par. 1075, case No. 85—CA—0027—C (Illinois Educational Labor Relations Board, June 17, 1987).

Initially, the BOG argues the Board erred in finding the language of the bargaining agreement provided for the arbitration of employee discharges. The BOG notes the contract provides an alternative forum to determine just cause for discharge, the civil service rules. Although the BOG acknowledges that the bargaining agreement calls for discharge only for just cause, it asserts the civil service rules determine the nature of just cause. The BOG maintains that since the bargaining agreement does not expressly state discharges are arbitrable, the Board erred in implying arbitration into the bargaining agreement.

The Board argues the language of the agreement supports its conclusion. Since there was no specific exclusion of discharge disputes from arbitration, such disputes are arbitrable under the bargaining agreement's express language. AFSCME notes the language of the bargaining agreement provides for arbitration of discharges.

The meaning of the language used in a written contract is ordinarily a question of law. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 469 N.E.2d 178.) The primary objective in construing a contract is to effectuate the parties' intentions when entering the agreement. The entire document should be considered. (*Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 490 N.E.2d 972.) Absent ambiguity, the intention of the parties must be gathered from the language used in the contract, not from a party's construction of that language. (*Lenzi*, 103 Ill. 2d 290, 469 N.E.2d 178.) A contract is ambiguous if it is subject to more than one reasonable interpretation. (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 514 N.E.2d 479.) The clear and unambiguous language of a bargaining agreement should control. *Bogguess v. Board of Education* (1985), 133 Ill. App. 3d 864, 479 N.E.2d 1100.

Article VI defines a grievance as "any difference, complaint or dispute between the employer and the union or any employee regarding the application, meaning or interpretation of this agreement." Discharge is listed as a form of discipline in article XI, section 1(d), of the bargaining agreement. The same section provides that disciplinary actions may only be imposed for just cause. The arbitration procedure as set forth in the agreement does not discuss or exclude any type of grievance. The authority to contract section states that

the bargaining agreement incorporates "except as otherwise provided herein" the civil service rules. Viewing the bargaining agreement as a whole, a dispute over whether discharge is for good cause may be the subject of a grievance. Thus, such a dispute is subject to arbitration. The contract provides for the grievability of all disputes arising out of the application or interpretation of its terms. Discharge shall only be for good cause according to the express terms of the bargaining agreement. Thus the plain language of the bargaining agreement supports a conclusion that a dispute over discharge is grievable. The authority to contract article does not detract from this conclusion. The civil service rules apply only except as otherwise provided in the bargaining agreement.

■ The presumption of favoring arbitrability of labor disputes supports our conclusion. Arbitration is looked upon as a uniquely suitable method for settling labor disputes. In cases of doubt, courts should decide in favor of arbitration. (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347; *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358.) In order to exclude a matter from the grievance arbitration process, the bargaining agreement must specifically state the matter is not grievable. (*Warrior*, 363 U.S. at 584-85, 4 L. Ed. 2d at 1418-19, 80 S. Ct. at 1354.) Illinois has approved this presumption in public sector bargaining matters. (*City of Decatur v. AFSCME* (1988), 122 Ill. 2d 353, 522 N.E.2d 519.) However, a party cannot be forced to arbitrate a matter which he has not agreed is subject to arbitration. *Monmouth Public Schools v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100.

The applicability of the presumption favoring arbitrability is further supported by section 10(c) of the Act. This section specifically provides for binding arbitration of bargaining agreement disputes. (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c).) This indicates that educational disputes in Illinois are presumed to be arbitrable.

The BOG cites *City/County of Butte-Silver Bow v. Montana Board of Personnel Appeals* (Mont. 1987), 732 P.2d 835, for the proposition that the "except as otherwise provided herein" language in the instant bargaining agreement was sufficient to incorporate civil service discharge rules and exclude from arbitration discharge disputes. We disagree.

*Butte* is distinguishable from the instant case. First, the bargaining agreement in *Butte* specifically subjected its terms to those of the

metropolitan police law. No such specific language is present in the instant agreement. The instant agreement specifically incorporates civil service rules, except as provided in the agreement. Second, a grievance was defined in *Butte* as a complaint of unfair treatment, unjust interpretation, or unjust application of the agreement. The agreement provided that an officer held his position unless he was discharged in accordance with the law. Therefore, the agreement in *Butte* by its express terms made the metropolitan police act applicable. Third, the metropolitan police act had been interpreted by the State's courts as conferring exclusive jurisdiction to decide matters concerning discharge to the police commission. Illinois courts have not yet interpreted the civil service laws as conferring exclusive jurisdiction upon the Merit Board to determine matters pertaining to discharges.

We find the plain language of the bargaining agreement in the instant case is unambiguous. It includes discharge as a subject matter for the grievance-arbitration procedure.

■ The BOG and its supporting *amici curiae* next argue the Board erred as a matter of law in finding employee discharges were grievable. A consideration of the relevant statutes is necessary. Section 36b(2) of "An Act to create the State Universities Civil Service System" (hereinafter Civil Service Act) states the purpose of the Civil Service Act is to establish a sound program of personnel administration at the university level. (Ill. Rev. Stat. 1985, ch. 24½, par. 38b1(2).) It establishes a merit board (Ill. Rev. Stat. 1985, ch. 24½, par. 38b2) which is empowered to establish rules for the removal of employees (Ill. Rev. Stat. 1985, ch. 24½, par. 38b3(11)).

Section 36*o* of the Civil Service Act provides:

"After the completion of his probationary period, no employee shall be demoted, removed or discharged except for just cause, upon written charges, and after an opportunity to be heard in his own defense if he makes a written request for a hearing to the Merit Board within 15 days after the serving of the written charges upon him. Upon the filing of such a request for a hearing, the Merit Board shall grant such hearing ***. *** The hearing board shall make and render findings of facts on the charges and transmit to the Merit Board a transcript of the evidence along with its findings of fact. The findings of the hearing board when approved by the Merit Board shall be certified to the employer. If cause for demotion, removal or discharge is found, the employee shall be immediately separated from the service. If cause is not found, the employee shall

forthwith be reassigned to perform the duties of a position in his classification without loss of compensation. \*\*\*

The provisions of the Administrative Review Law \*\*\* shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Merit Board hereby created." Ill. Rev. Stat. 1985, ch. 24½, par. 38b14.

Section 1 of the Act states:

"It is the public policy of this State and the purpose of this Act to promote orderly and constructive relationships between all educational employees and their employers. Unresolved disputes between the educational employees and their employers are injurious to the public, and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. It is the purpose of this Act to regulate labor relations between educational employers and educational employees, including the designation of educational employee representatives, negotiation of wages, hours and other conditions of employment and resolution of disputes arising under collective bargaining agreements. *The General Assembly recognizes that substantial differences exist between educational employees and other public employees as a result of the uniqueness of the educational work calendar and educational work duties and the traditional and historical patterns of collective bargaining between educational employers and educational employees and that such differences demand statutory regulation of collective bargaining between educational employers and educational employees in a manner that recognizes these differences.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 48, par. 1701.)

Section 4 of the Act states:

"Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by employee representatives. (Ill. Rev. Stat. 1985, ch. 48, par. 1704.)

Section 10(a) of the Act states the employer and union have a duty to meet and confer in good faith with respect to "wages, hours and

other terms and conditions of employment." (Ill. Rev. Stat. 1985, ch. 48, par. 1710(a).) Section 10(b) of the Act states:

"The parties to the collective bargaining process *shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois. The parties to the collective bargaining process may effect or implement a provision in a collective bargaining agreement if the implementation of that provision has the effect of supplementing any provision in any statute or statutes enacted by the General Assembly of Illinois pertaining to wages, hours or other conditions of employment; provided however, no provision in a collective bargaining agreement may be effected or implemented if such provision has the effect of negating, abrogating, replacing, reducing, diminishing, or limiting in any way any employee rights, guarantees or privileges pertaining to wages, hours or other conditions of employment provided in such statutes.* Any provision in a collective bargaining agreement which has the effect of negating, abrogating, replacing, reducing, diminishing or limiting in any way any employee rights, guarantees or privileges provided in an Illinois statute or statutes shall be void and unenforceable \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 1710(b).

Section 10(c) of the Act provides the bargaining agreement shall contain a grievance resolution procedure. This procedure includes binding arbitration of all disputes concerning the administration or interpretation of the agreement. Ill. Rev. Stat. 1985, ch. 48, par. 1710(c).

The BOG argues the Board attempted to expand its powers by misinterpreting the Act and disregarding the exclusivity of the Civil Service Act. The BOG also asserts that Merit Board review is the exclusive remedy provided an employee upon discharge. The Board asserts nothing in the Civil Service Act mandates a finding that discharges are to be reviewed exclusively through the Merit Board. Several parties have filed *amicus* briefs either in support of or in opposition to the Board's orders.

■ Interpretation and construction of statutes are governed by the principle that the legislature's intent should be ascertained and given effect. (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 499 N.E.2d 1309.) In determining legislative intent, consideration must be given to the entire statute, its nature,

object, and purpose. If the intent of the legislature can be ascertained from the language of the statute, then that intent will prevail without resort to construction aids. (*Benjamin,* 114 Ill. 2d 150, 499 N.E.2d 1309.) The language of the statute should be given its plain and ordinary meaning. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 475 N.E.2d 536; *Hettenhausen v. Economy Fire & Casualty Co.* (1987), 154 Ill. App. 3d 488, 507 N.E.2d 121; *Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 509 N.E.2d 702.

■ The language of the Civil Service Act does not expressly state that it is the exclusive method of reviewing employee discharges. It does not, however, acknowledge the existence of any alternative system for reviewing employee discharges. Judicial review of the Merit Board's decisions may only occur pursuant to the administrative review procedures. (*Mason v. Board of Trustees* (1984), 125 Ill. App. 3d 614, 617, 466 N.E.2d 365, 367; *Heap v. University Civil Service Merit Board* (1967), 83 Ill. App. 2d 350, 227 N.E.2d 560.) The fact that a statute does not address alternative methods to contest discharges does not imply the legislature intended the provisions set forth in the statute to be the employee's exclusive option when contesting a discharge. The Civil Service Act, prior to the Act, was the only method for contesting a discharge in Illinois. Therefore, it is logical the legislature did not mention alternative paths of review.

In *City of Decatur,* the court upheld a finding that the city had committed an unfair labor practice under sections 10(a)(1) and 10(a)(4) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1),(4)). The city had refused to bargain over a union proposal which would permit employees covered by the Illinois Municipal Code provisions (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—18) to submit disciplinary grievances to arbitration. Grievance was defined in a similar manner as grievance is defined in the instant case. *City of Decatur* (1988), 122 Ill. 2d at 363, 522 N.E.2d at 1223.

The *City of Decatur* court noted the proposal would eliminate terminations from the jurisdiction of the municipal civil service commission and submit them to binding arbitration. The city argued that its duty to bargain collectively did not extend to disciplinary matters because these were covered by the civil service statute. The court rejected this argument. It noted that under the Illinois Public Labor Relations Act parties are required to bargain over mandatory subjects which were not specifically provided for in other laws, civil service provisions may be supplemented, and in determining whether civil service provisions override the bargaining duty, it is appropriate to

consider the nature of the civil service law. (*City of Decatur*, 122 Ill. 2d at 363-67, 522 N.E.2d at 1223-25.) The court held that given the nature of the Illinois Public Labor Relations Act, the nature of the civil service system under consideration, and the express legislative preference for arbitration, the city committed an unfair labor practice by refusing to bargain over the union's proposal. *City of Decatur*, 122 Ill. 2d at 366-67, 522 N.E.2d at 1225.

Other jurisdictions addressing this question have resolved the issue in various fashions. In *Devine v. City of Des Moines* (Iowa 1985), 366 N.W.2d 580, the Iowa Supreme Court held the civil service commission had exclusive jurisdiction over employee discharges. It upheld a lower court determination that two discharged employees could not pursue grievances. The Iowa Code provided that no person could be removed except as provided in the civil service law. The *Devine* court noted that the statute gives the civil service commission exclusive jurisdiction over employee discharges. Additionally, the contract in *Devine* in its grievance procedure stated the arbitrator did not have the authority to decide a grievance which was subject to the civil service commission's jurisdiction. *Devine*, 366 N.W.2d at 582.

The BOG relies upon *Devine* as support for its argument that the Civil Service Act relating to university employees is exclusive. However, in *Devine*, the contract excepted from the arbitrator's consideration matters which were covered by the civil service law. The contract in the instant case does not do this. Additionally, the civil service statute in *Devine* stated that an employee could not be discharged unless its provisions were complied with. Section 36*o* of the civil service law in the instant case is not as specific.

In *New Jersey v. Local 195, IFPTE* (1981), 179 N.J. Super. 146, 430 A.2d 966, the court held that under New Jersey's statute the power to discipline an employee was nondelegable. It noted the civil service statute preempted the labor act. The provisions of the civil service statute had been found mandatory and exclusive by prior courts considering the question. The statute stated that no employee could be dismissed " 'in any manner or by any means other than those prescribed by this subtitle.' " *Local 195*, 179 N.J. Super. at 154, 430 A.2d at 970; see also *New Jersey v. State Supervisory Employees Association* (1978), 78 N.J. 54, 393 A.2d 233; *Laborers' International Union of North America v. Delaware ex rel. Department of Health & Social Services* (Del. Ch. 1973), 310 A.2d 664.

A contrary view has been taken by other jurisdictions based upon their statutes. In *Incorporated Village of Lake Grove v. Civil Service Employees Association, Inc.* (1986), 118 A.D.2d 781, 500 N.Y.S.2d

290, a New York court held that a stay of arbitration was properly denied. The court noted the collective bargaining agreement encompassed arbitration of the dismissal of a noncivil service employee. It noted the bargaining agreement may modify or even supplant the civil service laws. See also *Board of Education v. Auburn Teachers Association* (1985), 115 A.D.2d 296, 496 N.Y.S.2d 132 (public policy permitted the review of a teacher's discipline even if the arbitrator's decision was contrary to the civil service board's decision); *Township of Clinton v. Contrera* (1979), 92 Mich. App. 297, 284 N.W.2d 787.

In *AFSCME v. County of Lancaster* (1978), 200 Neb. 301, 263 N.W.2d 471, the county refused to bargain about matters referred to in the civil service statutes. The public bargaining statute provided for bargaining on wages, hours, terms, and conditions of employment. The civil service statute provided review of any discharge if the employee wished the review. The court found defendant had no right to refuse to bargain on all matters covered by the civil service laws. See generally *Pacific Legal Foundation v. Brown* (1981), 29 Cal. 3d 168, 624 P.2d 1215, 172 Cal. Rptr. 487; *AFSCME Council 75 v. Clackamas County* (1984), 69 Or. App. 488, 687 P.2d 1102.

■ Section 36o of the Civil Service Act provides a hearing on just cause only if the employee requests one, within the applicable time frame. (Ill. Rev. Stat. 1985, ch. 24½, par. 38b14.) If the employee does not request a hearing, the discharge becomes final upon the written charges of the employer. (80 Ill. Adm. Code 250.110(e)(3) (1985).) In effect, although the statute provides employees shall only be discharged for just cause, just cause is only determined if the employee seeks a review of the discharge decision. This contrasts the Illinois procedure with that set forth in other States. Additionally, the Illinois statute does not state that it is the exclusive method by which an employee may be discharged.

■ Section 4 of the Act provides educational employees and employers have a duty to bargain over matters affecting "wages, hours and terms and conditions of employment." (Ill. Rev. Stat. 1985, ch. 48, par. 1704.) Employers are not required to bargain over matters of inherent managerial policy which include areas of discretion such as policy functions, standards of service, overall budget, selection of new employees, and direction of employees. (Ill. Rev. Stat. 1985, ch. 48, par. 1704.) The purpose of the Act is to promote order and constructive relationships between educational employees and their employers. This purpose would be frustrated if the employer were to bargain for a provision, agree to it, and then be allowed to abrogate its effect by asserting the exclusivity of the civil service statutes. We find nothing

inherent in the Civil Service Act in question here which prohibits an employee's representative from bargaining for increased employee rights in the event of a discharge decision (see generally *City of Decatur*, 122 Ill. 2d at 364-65, 522 N.E.2d at 1225) and from seeking enforcement of that bargain.

In a related argument, the parties assert that the language of section 10(b) of the Act either supports a finding that the arbitration provision in the instant case is void or supports a finding that it is a supplement and therefore permitted by the statute. The BOG and its *amici curiae* argue the grievance-arbitration procedure is either in violation of or inconsistent with the Civil Service Act. They argue it in effect would remove employee rights and therefore is void. The Board and AFSCME argue the grievance-arbitration provision supplements employee rights.

Although we agree that the arbitration procedure is radically different from the civil service procedure, the mere fact that an alternative procedure exists does not mean the two systems conflict or are inherently inconsistent with each other. The existence of a separate procedural remedy for a discharged employee does not detract from the employee's rights but instead supplements them.

The BOG argues the bargaining procedure will supplant the civil service procedure. The employee is not obligated to appeal a discharge under the civil service procedure. Since this is true, the fact that an employee elects to follow the grievance procedure does not in effect replace an optional civil service appeal. Section 10(b) of the Act's language indicates that provisions which supplement existing rights are valid. Providing a separate set of additional procedural remedies for a discharged employee adds to the employee's rights and thus supplements those rights previously afforded by the statute. The legislative history of the Act supports a conclusion that provisions which increase employee rights are valid. See 83d Ill. Gen. Assem., House Proceedings, May 18, 1983, at 145-47 (statements of Representatives Hoffman and Stuffle); 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 21-27 (statements of Senator Bruce).

The BOG urges this court to follow the reasoning of the Pennsylvania Supreme Court in *Neshaminy Federation of Teachers v. Neshaminy School District* (1983), 501 Pa. 534, 462 A.2d 629. The Board and AFSCME urge this court to follow the Pennsylvania interpretation of its statute. They note *Neshaminy* was legislatively overruled in Pennsylvania. Initially, it should be noted that the first sentence of section 10(b) of the Act is identical to section 703 of the Pennsylvania Public Employment Relations Act prior to *Neshaminy*.

In *Neshaminy*, the court addressed whether discharge of a tenured teacher pursuant to the school code gave rise to a grievance under the collective bargaining agreement. The court concluded discharge was not grievable. The court first analyzed the collective bargaining agreement. The agreement stated nothing contained in it could supersede the school code. The *Neshaminy* court then found the parties did not intend by their language in the bargaining agreement to include discharge as a grievable disciplinary procedure. The court reasoned the authority of the school board to discharge was not delegable. It noted that only where the school code did not provide standards to review the school board's disciplinary action could an alternate bargaining remedy be provided. The school code in *Neshaminy* provided for a mandatory hearing on the charges at which time the teacher was given an opportunity to appear and present his case. *Neshaminy*, 501 Pa. at 542 n.7, 462 A.2d at 633 n.7.

The *Neshaminy* court found the availability of parallel remedies with appellate rights for each would delay the dismissal process and frustrate labor goals. (*Neshaminy*, 501 Pa. at 546, 462 A.2d at 635.) The *Neshaminy* court relied on the fact that the termination of tenured employees was controlled by the school code, which provided substantive and procedural protections. The court noted that viewing discharge as arbitrable would conflict with section 703 of its public employment law because it would result in a supplanting of the school code's mandatory procedures. *Neshaminy*, 501 Pa. at 549, 462 A.2d at 637.

Prior to *Neshaminy*, the Pennsylvania courts had found that the mere fact that the school code covered wages, hours, and conditions of employment did not remove the matters covered as proper subjects of bargaining. The Pennsylvania courts interpreted section 703 as precluding bargaining only where the other applicable statutory provision explicitly and in a definite manner prohibited the public employer from making an agreement about the matter in question. However, they interpreted section 703 as not restricting or prohibiting any measure which would add to an employee's statutory rights. *Rylke v. Portage Area School District* (1977), 473 Pa. 481, 375 A.2d 692; *Board of Education v. Philadelphia Federation of Teachers* (1975), 464 Pa. 92, 346 A.2d 35; *Pennsylvania Labor Relations Board v. State College Area School District* (1975), 461 Pa. 494, 337 A.2d 262; *AFSCME v. City of Reading* (1982), 66 Pa. Commw. 539, 445 A.2d 570.

Immediately after the *Neshaminy* decision, the Pennsylvania legislature retroactively amended the Pennsylvania school code. The amendment provided professional employees had a right to choose be-

tween the bargaining agreement remedies and those provided in the school code. See *Wilson Area Education Association v. Wilson Area School District* (1985), 90 Pa. Commw. 151, 494 A.2d 506.

As a general rule, when a statute is adopted from another State, the interpretation of that statute accompanies it. (*Cook v. Dove* (1965), 32 Ill. 2d 109, 113, 203 N.E.2d 892, 895.) It may be presumed the legislature adopted the language with the knowledge of the previous construction placed upon it. (*Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 507 N.E.2d 1200.) Dissimilarities indicate the legislature wished to achieve a different result.

Here, therefore, it may be presumed that the General Assembly was aware of the general Pennsylvania interpretation of section 703 and aware of the Pennsylvania legislature's reaction to the *Neshaminy* case. The Illinois statute needs to be considered in light of the fact that this presumption can be used. The Illinois statute adds language after the identical provision of section 703 which clarifies an intent to supplement employee rights and not detract from them. The second sentence of section 10(b) addresses the argument that the civil service rules could not be supplemented. It specifically provides contract provisions may supplement existing rights. An alternate forum, if it does not reduce the employee's option of appealing through the civil service system, is therefore valid. Since the alternate procedure provided in the instant bargaining agreement would not affect in any way the employee's civil service rights, it cannot be said to be inconsistent with or detract from those rights.

Additionally, *Neshaminy* is distinguishable on its face from the instant case. The bargaining agreement in *Neshaminy* by its terms did not include discharge as a grievable matter. The bargaining agreement in the instant case does so. The school code in *Neshaminy* provided for a mandatory hearing to determine the soundness of the discharge. The hearing under the civil service law in the instant case is only at the employee's request. If the employee does not request the hearing to determine just cause for termination, one is not held.

The BOG argues it has no authority to delegate the rights of the Merit Board in discharge matters. Prior to enactment of the Act it was generally held that a public agency could not delegate matters of discretion which were vested in it by the General Assembly. (*Proviso Council of West Suburban Teachers Union, Local 571 v. Board of Education* (1987), 160 Ill. App. 3d 1020, 513 N.E.2d 996.) In *Board of Education of Rockford School District No. 205 v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, 501 N.E.2d 338, the court

held that enactment of the Act has not abolished the principle that discretionary appointment of teachers is a nondelegable power, vested in the local school boards. The court reasoned that the school code vests sole power to appoint teachers in the school boards. The Act provides bargaining agreements which conflict with existing statutes are void. Therefore, a contract clause which provides for the appointment of teachers by seniority was void. This holding is consistent with the Act which, in its management right sections, specifically notes that policy decisions involving direction of employees are not subjects of mandatory bargaining. Ill. Rev. Stat. 1985, ch. 48, par. 1704.

In other States, the adoption of public bargaining statutes has limited the nondelegable duties concept unless the statute specifically states certain matters are not bargainable. (See *Board of Directors v. Maine School Administrative District No. 36 Teachers Association* (Me. 1981), 428 A.2d 419; *Cohoes City School District v. Cohoes Teachers Association* (1976), 40 N.Y.2d 774, 358 N.E.2d 878; *Pennsylvania Labor Relations Board v. State College Area School District* (1975), 461 Pa. 494, 337 A.2d 262; *Three Village Teachers' Association v. Three Village Central School District* (1987), 128 A.D.2d 626, 512 N.Y.S.2d 878; see generally F. Elkouri & E. Elkouri, How Arbitration Works 77-95 (4th ed. 1985).) This court need not address whether the BOG here had a nondelegable duty which precluded it from agreeing to arbitrate the discharge of a civil service employee. It is the Merit Board's authority which the BOG argues is being delegated, not its own.

■■ The BOG raises several policy arguments which it asserts should render the agreement void. These policy matters are not properly before the court at this time and, therefore, need not be addressed.

The BOG suggests that in the instant case principles of *res judicata* should be applied to preclude an arbitrator determining the issue of good cause for discharge. The BOG contends that allowing a grievance to go to arbitration will allow a collateral attack on the Merit Board's decision.

■■ Under the doctrine of *res judicata*, a final judgment rendered by a court on the merits of an issue is conclusive as to the rights of the parties and their privies. That judgment is a bar to any subsequent actions involving the same claims or demands by the same parties. (*Catlett v. Novack* (1987), 116 Ill. 2d 63, 506 N.E.2d 586; *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.) Collateral estoppel applies where a party or someone in privity with a party participates in two separate trials arising on different causes of

action and some controlling fact or question material to the termination of both has been previously adjudicated against that party in the former suit. (*Housing Authority*, 101 Ill. 2d 246, 461 N.E.2d 959.) The doctrine of *res judicata* applies in this case.

The decision of the Supreme Court of Iowa in *Shenandoah Education Association v. Shenandoah Community School District* (Iowa 1983), 337 N.W.2d 477, provides some guidance in the determination of the issues in this case. In *Shenandoah* Gardner, a teacher, was served with a termination of her employment as a teacher pursuant to the Iowa statutes. Gardner requested a statutory private hearing and also filed with the Shenandoah Educational Association as her collective bargaining representative a grievance under the negotiated collective bargaining agreement. Thus, there were two concurrent dispute resolution procedures initiated, the request for hearing *triggering* the statutory appeal procedures under the Iowa Code and the grievance leading toward arbitration under the negotiated agreement. Gardner requested that the private hearing concerning the statute be continued until her grievance was resolved or decided by an arbitrator. The board denied her request and found against Gardner. She filed a statutory appeal from that decision. The grievance procedure was also proceeding at the same time and the arbitrator issued his decision finding contrary to what the board had found and concluded that the district had violated the negotiated agreement in terminating Gardner. Gardner moved to stay further proceedings under the statutory grounds on the basis that the arbitrator's decision if honored or enforced would bind the district and bar termination of her contract. This move was denied and Gardner then sought relief by initiating three separate actions in the trial court: (1) she joined with the association in filing a petition in equity seeking enforcement of the arbitrator's decision; (2) she filed a petition for judicial review of the adjudicator's denial of her motion to stay the statutory proceedings; and (3) Gardner filed a statutory notice of appeal seeking judicial review of the decision which upheld the board's termination of her contract. The trial court vacated the arbitrator's decision and affirmed the decision of the adjudicator, thereby upholding the district's action in terminating Gardner. The supreme court of Iowa found that the determination of which teacher should be selected for layoff may properly be the subject of negotiated agreement. This is so even though the provisions of the Iowa statute are written into such contracts and ordinarily would be followed when the school district decides to reduce its staff by terminating one or more teachers.

In *Shenandoah*, the teacher requested a stay of the statutory

proceedings in order to give credence to the grievance procedures. Here no action was taken by Brown or the union to stay the decision of the Merit Board.

As pointed out in *Shenandoah*:

"It is extremely unfortunate that the parties here struggled through so many hearings and procedural difficulties leading up to this decision on the merits. Concurrent or parallel grievance procedures and statutory appeal proceedings should be avoided by public employers, their employees and collective bargaining organizations whenever possible." (*Shenandoah*, 337 N.W.2d at 482.)

This same reasoning should apply in this case. The parties in a bargaining agreement may provide grievance procedures for discharge when the rights of the employee are not diminished. Under present Illinois law and the bargaining agreement, Brown had the option of pursuing the statutory Merit Board proceedings or the bargaining agreement. Be it bad advice to Brown by the agency (BOG), her willingness and request to the Merit Board for a hearing, and her failure to request a stay of the Merit Board proceedings, neither she nor the association can now complain.

In *Shenandoah*, the employee did not ignore the statutory proceeding decision but sought judicial review, while at the same time pursuing her grievance proceeding and requesting a stay of the statutory proceeding.

While the result here may seem harsh, it is no more so than in myriad other proceedings where a litigant or party is required to raise their objections to a proceeding in which they appear, and also to pursue the objections through final review in order to preserve them. The fact that the employee's grievance was returned to her prior to the proceeding before the Merit Board did not eliminate her duty to pursue her objections to that proceeding, rather than permitting its decision to become final.

In this case, Brown did not seek judicial review of the Merit Board decision and did not seek a stay of its enforcement. As an aside, legislative action could provide guidance and remedies for those types of proceedings.

For the above reasons, we find the Illinois Educational Labor Relations Board correctly found the BOG committed an unfair labor practice by refusing to process Brown's grievance. However, the remedial order of the Illinois Educational Labor Relations Board, requiring the BOG to process the grievance must be vacated. Interests of judicial economy and principles of *res judicata* require affirmance

of the determination of the Merit Board once the employee has elected to follow civil service discharge procedures.

Affirmed in part; vacated in part.

LUND and SPITZ, JJ., concur.