30 September 1999

NO. 4-98-0482

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

ADAMS COUNTY SHERIFF ROBERT NALL and ) Appeal from

THE ADAMS COUNTY SHERIFF'S MERIT ) Circuit Court of

COMMISSION, ) Adams County

Plaintiffs-Appellants, ) No. 97MR116

v. )

THE INTERNATIONAL ASSOCIATION OF )

MACHINISTS and AEROSPACE WORKERS, AFL- ) Honorable

CIO, LOCAL LODGE 822, DIS­TRICT 123, ) Michael R. Roseberry,

Defendant-Appellee. ) Judge Presiding.

PRESIDING JUSTICE KNECHT delivered the opinion of the 

court:

In November 1997, plaintiffs, Adams County Sheriff Robert Nall and the Adams County Sheriff's Merit Commission (Com

mission), filed a declara­tory judgment action alleging Sher­iff Nall was under no obliga­tion to bargain with defen­dant, the In­

terna­tion­al Asso­cia­tion of Machinists and Aero­space Work­ers, AFL-

CIO, Local Lodge 822, District 123 (Un­ion), re­gard­ing the Commis

sion's disci­plin­ary and promo­tional proce­dures.  The circuit court granted defendant's motion to dis­miss (735 ILCS 5/2-615 (West 1996)).  Plaintiffs appeal, argu­ing they could not bargain over this issue be­cause the leg­is­la­ture man­dated Adams Coun­ty adopt and im­ple­ment specif­ic pro­ce­dures gov­ern­ing em­ployee disci­

pline and promo­tions.  We agree and re­verse.

I. BACKGROUND

Adams County originally created the Commission in 1969 pur­suant to either the County Police De­part­ment Act (Ill. Rev. Stat. 1967, ch. 125, par. 101 
et
 
seq
.(repealed by Pub. Act 81-

1475, §19, eff. Janu­ary 1, 1981 (1980 Ill. Laws 1651, 1658))), or section 58.1 of "An Act to re­vise the law in rela­tion to coun­

ties" (Ill. Rev. Stat. 1979, ch. 34, par. 859.1 (Merit System for Deputy Sheriffs) (re­pealed by Pub. Act 81-1475, §19, eff. January 1, 1981 (1980 Ill. Laws 1651, 1658))).  In 1974, Sher­iff Nall became Adams County's sher­iff.

In January 1996, the Union became the ex­clu­sive bar­

gain­ing repre­senta­tive for all full-time sworn pa­trol offi­cers, depu­ty sher­iffs, correc­tions offi­cers, and em­ploy­ees as­signed to the "SWAP" program of the sheriff's of­fice.  In Novem­ber 1997, plain­tiffs filed a declaratory judgment action asking the court to find Sheriff Nall could not bar­gain over the dis­ci­plin­ary and promotional procedures.

Plaintiffs' com­plaint alleged that in March 1996 Sher

iff Nall and the Union en­gaged in nego­tia­tions for a col­lec­tive-

bar­gain­ing agree­ment.  During these nego­tia­tions, the Union sought to in­clude provi­sions al­lowing for arbi­tra­tion of dis­ci­plin­ary and pro­mo­tional issues.  However, Sheriff Nall re­fused to bar­gain over this issue be­cause section 3-8002 (55 ILCS 5/3-8002 (West 1996)) of the Sheriff's Merit Sys­tem Law (Mer­it Law) (55 ILCS 5/3-8001 through 3-8018 (West 1996)), a division of the Counties Code (55 ILCS 5/1-1001 
et
 
seq
. (West 1996)), required Adams County to adopt the disciplinary and promo­tional proce­dures es­tab­lished there­in.  Sec­tion 3-8002 pro­vides, in per­ti­nent part:

"The county board of every county having a county police department merit board estab­

lished under 'The County Police Department Act' *** or a merit com­mis­sion for sheriff's personnel estab­lished under Section 58.1 of 'An Act to re­vise the law in relation to counties' *** 
shall
 
adopt
 
and
 
implement
 the merit system provided by this Division and 
shall
 
modify
 the merit system *** to com­ply with this Divi­sion."  (Em­phasis add­ed.) 55 ILCS 5/3-8002 (West 1996).

There­af­ter, the par­ties reached a collective-bargain­ing agree­ment but did not include pro­ce­dures gov­ern­ing dis­ci­pline and promo­tions.  Plaintiffs attached a copy of the agreement to the com­plaint.  Plaintiffs also filed an affi­davit from the clerk of Adams Coun­ty indi­cat­ing Adams County was not a home rule unit of gov­ern­ment (Ill. Const. 1970, art. VII, §6).  The Union moved to dis­miss the com­plaint pursuant to sec­tion 2-615(a) of the Code of Civil Pro­ce­dure (735 ILCS 5/2-615(a) (West 1996)) for failure to state a cause of action.  The court granted the Union's mo­tion.  This ap­peal fol­lowed.

II. ANALYSIS

On appeal, plaintiffs assert section 3-8002 of the Merit Law mandated Adams Coun­ty adopt the dis­ci­plin­ary and pro­mo­

tional procedures set forth by the legislature (55 ILCS 5/3-8013, 3-8014 (West 1996)).  They contend Adams Coun­ty could not amend or al­ter the Merit Law's provi­sions be­cause it is not a home rule unit of gov­ern­ment.  Ac­cord­ing­ly, they argue Sher­iff Nall could not bar­gain over these is­sues.  See 
City of Decatur v. Amer­i­can Fed­er­ation of State, Coun­ty, & Municipal Employees, Local 268
, 122 Ill. 2d 353, 365-66, 522 N.E.2d 1219, 1224-25 (1988).

The Union responds the Merit Law does not state its pro­ce­dures governing employee dis­ci­pline and pro­mo­tions are the exclu­sive means for reviewing employee-related issues.  See 
Board of Gov­er­nors of State Col­leg­es & Uni­ver­si­ties v. Illi­nois Edu­ca­

tion­al Labor Rela­tions Board
, 170 Ill. App. 3d 463, 475, 524 N.E.2d 758, 764 (1988) (hereinafter 
BOG
) (holding that the fact "a statute does not address alternative methods to contest dis

charges does not imply *** the provisions set forth in the statute to be the employee's exclusive option").  Fur­ther, the Union con­tends pub­lic poli­cy fa­vors arbi­tra­tion in settling employment disputes.  See 
For­est Pre­serve Dis­trict­ v. Illi­nois Local Labor Rela­tions Board
, 190 Ill. App. 3d 283, 291, 546 N.E.2d 675, 680 (1989) (re­fusing to hold the Illi­nois Pub­lic Labor Rela­tions Act (Labor Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 1601 through 1627) pre­domi­nates over civil service rules only when the civil service stat­ute is op­tional).  Thus, the Union argues Sher­iff Nall should have bar­gained over these is­sues.

 Dismissal on the pleadings is prop­er when plain­tiffs cannot prove facts enti­tling them to re­cov­ery.  
Illi­nois Graph­ics Co. v. Nickum
, 159 Ill. 2d 469, 488, 639 N.E.2d 1282, 1291 (1994).  In ruling on a section 2-615 mo­tion to dis­miss, the court ac­cepts as true the com­plaint's well-pleaded facts and all reasonable infer­ences drawn there­from.  
Kolegas v. Heftel Broad­

casting Corp.
, 154 Ill. 2d 1, 8-9, 607 N.E.2d 201, 205 (1992).  The ruling on mo­tion to dis­miss is re­viewed 
de
 
novo
.  
Sherman v. Kraft Gen­eral Foods, Inc.
, 272 Ill. App. 3d 833, 835-36, 651 N.E.2d 708, 710 (1995).

The duty to bargain collectively is found in sec­tion 7 of the Labor Act (5 ILCS 315/7 (West 1996)), which states in pertinent part:

"The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours[,] and other conditions of employment, not spe­cifi­cally provided for in any other law or not specifically in violation of the provi­sions of any law.  If any other law pertains, in part, to a matter affecting the wages, hours[,] and other conditions of employ­ment, such other law shall not be con

strued as limiting the duty 'to bargain col

lectively' and to enter into collective[-] bargaining agree­ments *** which either sup

plement, im­ple­ment, or relate to the effect of such provi­sions in other laws."  

Further, "[w]e do not believe that the legislature in­tended to make the broad du­ties imposed by the [Labor] Act hos­tage to the myri­ad of State stat­utes and local ordi­nanc­es per­taining to mat­

ters of pub­lic employ­ment."  
City of Decatur
, 122 Ill. 2d at 364, 522 N.E.2d at 1224.

In 
City of Decatur
, Decatur, a home rule unit of gov­

ernment, adopt­ed a civil service system under arti­cle 10, divi­

sion 1 of the Illinois Municipal Code (Municipal Code) (Ill. Rev. Stat. 1985, ch. 24, pars. 10-1-1 through 10-1-48) to review dis­ciplin­ary mat­ters for public employees.  The union there sought to bar­gain over a pro­posal allow­ing an arbi­tra­tor to re­solve all griev­ances.  The Illi­nois State Labor Rela­tions Board con­clu­ded Decatur was re­quired to bar­gain with the union over dis­ci­plin­ary mat­ters, and the supreme court agreed.  See 
City of Decatur
, 122 Ill. 2d at 362, 522 N.E.2d at 1223.

In reaching its conclusion, the court consid­ered the fol­low­ing three fac­tors:  (1) Illinois' pub­lic poli­cy grant­ing full free­dom to bargain over wages, hours, and other condi­tions of em­ploy­ment; (2) the option­al na­ture of the civil ser­vice sys­

tem and the city's au­thority to unilaterally alter or amend the terms; and (3) the legislature's ex­press pref­er­ence for arbi­tra­

tion to re­solve labor disputes.  See 
City of Decatur
, 122 Ill. 2d at 366, 522 N.E.2d at 1225; see also 
Ameri­can Feder­ation of State, County & Munic­ipal Em­ploy­ees, Council 31 v. County of Cook
, 145 Ill. 2d 475, 482, 584 N.E.2d 116, 119 (1991) (hereinaf

ter 
AFSCME
).

First, the court stated the mere exis­tence of a stat­ute regulating a subject does not, with­out more, remove the sub­ject from the scope of the bargaining duty under section 7 of the Labor Act.  
City of Decatur
, 122 Ill. 2d at 364-65, 522 N.E.2d at 1224.  As an example, the court noted the minimum wage law would not relieve an employer from bargaining over wages.  "Thus, in the determination whether the civil service provisions adopted by the city must override the bargaining duty imposed by the [Labor] Act, it is appropriate to consider the nature of the other law."  
City of Decatur
, 122 Ill. 2d at 365, 522 N.E.2d at 1224.

Second, the court noted the civil service system uti­

lized by Decatur was an optional scheme whereby Decatur could unilaterally alter and amend one or all of its terms.  Conse

quently, "a home rule city, such as Decatur, *** is not pro­hib­it­

ed from altering its terms.  The city could, if it chose to, eliminate those features of the civil service system at issue here."  
City of Decatur
, 122 Ill. 2d at 365-66, 522 N.E.2d at 1224.

Third, the court noted the importance of, and the leg

islature's pref­er­ence for, arbi­tra­tion to resolve labor dis­putes.  The court stated "[i]n this case, then, the union's pro­posal con­

cerns a well-rec­og­nized and famil­iar means for re­solving labor dis­putes."  
City of Decatur
, 122 Ill. 2d at 366, 522 N.E.2d at 1225.  The court con­clud­ed the duty to bar­gain im­posed by the Labor Act trumped the Municipal Code's provisions.

This court later employed the same three-pronged test.  See 
BOG
, 170 Ill. App. 3d at 475-76, 524 N.E.2d at 765.  In 
BOG
, the Illi­nois Edu­ca­tion­al Labor Rela­tions Board (La­bor Board) found the Board of Gover­nors com­mitted an un­fair labor prac­tice when it re­fused to review an employee's griev­ance regarding his discharge.  The col­lec­tive-bargaining agree­ment (1) defined a griev­ance as any differ­ence, com­plaint, or dis­pute be­tween the em­ploy­er and the union or any em­ployee, and (2) allowed either the employer or the union to refer an unresolved grievance to arbi­tration.  Based on this language, the Labor Board concluded bind­ing arbitration applied to all disputes concern­ing dis­charge of an em­ploy­ee.  
BOG
, 170 Ill. App. 3d at 467-69, 524 N.E.2d at 759-61.

On appeal, the Board of Governors argued the agree­ment also in­cor­po­rated the dis­ci­plin­ary provi­sions pro­vided in "An Act to create the State Uni­ver­si­ties Civil Ser­vice System" (Civil Ser­vice Act) (Ill. Rev. Stat. 1985, ch. 24½, pars. 38(b)(1) through 38(m)), which con­flicted with the Labor Board's conclu

sion.  See 
BOG
, 170 Ill. App. 3d at 474, 524 N.E.2d at 764.  The Board of Gover­nors con­tended the Civil Ser­vice Act provided the exclusive procedures concerning employee discipline and trump­ed the pro­vi­sions pro­vid­ed in the col­lec­tive-bar­gaining agree­ment.

This court con­cluded the dis­ci­plin­ary pro­vi­sions of the Civil Ser­vice Act did not ex­press­ly state they were the ex­clu­sive meth­od of re­view­ing em­ploy­ee dis­charg­es.  This court found the legislature's fail­ure to cite al­ter­na­tive sys­tems of re­view did not prove it in­tend­ed the Civil Service Act to be the only pro­ce­dure when reviewing em­ployee grievances.  The court stat­ed the lack of stated alter­native methods was logi­cal be­cause at the time the Civil Service Act was enact­ed, the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1701 
et
 
seq
.) did not exist.  
BOG
, 170 Ill. App. 3d at 475, 524 N.E.2d at 764.

We find both 
BOG
 and 
City of Decatur
 distinct from the present case.  First, the dis­ci­plin­ary and pro­mo­tion­al pro­ce­dures set forth in the Merit Law are not option­al.  55 ILCS 5/3-8002 (West 1996).  The use of the word "shall" in sec­tion 3-8002 mani­

fests the legislature's intent to require Ad­ams County to adopt and imple­ment the merit system pro­vided there­in.  See 
Peo­ple v. Woodard
, 175 Ill. 2d 435, 445, 677 N.E.2d 935, 940 (1997) (the word "shall" expresses man­datory in­tent).  Sec­ond, Adams County is not a home rule unit of govern­ment.  Adams Coun­ty does not have the abili­ty to control which parts of the Merit Law to adopt, alter, or amend.  See 
City of Markham v. State & Mu­nic­i­pal Team­sters, Chauf­feurs & Help­ers, Local 726
, 299 Ill. App. 3d 615, 618, 701 N.E.2d 153, 155-56 (1998).

In 
City of Markham
, Markham and the union representing the city's patrol officers disputed over a provision in the col­

lec­tive-bar­gaining agreement concerning the discipline of police offi­cers.  An arbitrator ruled in favor of the union's provision, and Markham sought to vacate the arbi­tra­tion award.  Markham ar­

gued the Mu­nici­pal Code es­tab­lished mandatory pro­ce­dures gov­ern­

ing the dis­ci­pline (see 65 ILCS 5/10-2.1-1 
et
 
seq
. (West 1996)).  Be­cause it was not a home rule unit of gov­ernment, Markham al

leged it could not alter these proce­dures, thereby lim­it­ing its ability to bar­gain.  
City of Markham
, 299 Ill. App. 3d at 617, 701 N.E.2d at 154.  Similar to this case, the appel­late court found Markham unable to bargain over the disci­plin­ary pro­cedures because the Municipal Code was manda­tory and Markham was unable to alter or amend any terms contained therein.  
City of Markham
, 299 Ill. App. 3d at 618, 701 N.E.2d at 155; see also 
Health Em­

ployees Labor Pro­gram ­v. County of Cook
, 236 Ill. App. 3d 93, 96-

97, 603 N.E.2d 591, 593 (1992) (a home rule entity has a duty to bar­gain with a union).

Our interpretation of the Merit Law's intent is further but­tressed by the fact the Merit Law was amend­ed and reen­acted (Pub. Act 86-962, art. 3, §3-8001, eff. Janu­ary 1, 1990 (1989 Ill. Laws 6012, 6091-97)) af­ter the Labor Act's enactment (Pub. Act 83-1012, §7, eff. July 1, 1984 (1983 Ill. Laws 6830, 6839-

40)).  Thus, the leg­is­la­ture could have con­sid­ered a county's duty to bar­gain in light of the mandatory nature of the Merit Law.  
Cf
. 
AFSCME
, 145 Ill. 2d at 483-84, 584 N.E.2d at 120.  By main­taining the manda­tory lan­guage of section 3-8002, the legis­lature expressed its desire to limit Adams County's ability to bar­gain over the Merit Law's procedures. 

We do not, however, find the supreme court intended Adams County's status as a non-home-rule unit of government to be the determining factor.  Nonetheless, said status, in addition to the mandatory nature of section 3-8002 of the Merit Law, lim­its plaintiffs' ability to bargain over various employ­ment-re­lated is­sues.  Accordingly, plaintiffs could not bargain over the dis­

ciplinary and promotional procedures.

III. CONCLUSION

For the reasons stated, the circuit court's judgment is reversed.

Reversed.

STEIGMANN, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I concur in part with the majority's analysis because  the Merit Law clearly imposes some limits upon a sheriff's abil

ity to bargain about a number of areas related to discipline.  However, I conclude the majority's order is too restrictive in its holding because it (1) does not fully comport with our hold

ing in 
BOG
, 170 Ill. App. 3d at 472, 524 N.E.2d at 762 ("Illinois courts have not yet interpreted the civil service laws as confer

ring exclusive jurisdiction upon the Merit Board to determine matters pertaining to discharges") and (2) does not grant the necessary deference to Illinois' public policy favoring collec

tive bargaining, as enunciated by the Supreme Court of Illinois in 
City of Decatur
, 122 Ill. 2d at 364, 522 N.E.2d at 1224 ("We do not believe that the legislature intended to make the broad duties imposed by the [Labor] Act hostage to the myriad of State statutes and local ordinances pertaining to matters of public employment. *** To construe the accommodation provision of sec

tion 7 narrowly would, we believe, frustrate the declared policy of the State").  

Moreover, contrary to the relatively definitive asser

tions in the majority opinion, some disciplinary and promotional procedures set forth in the Merit Law do appear optional.  For example, section 3-8013 of the Merit Law specifically states that "[d]isciplinary measures *** 
may
 be taken by the sheriff. Such disciplinary measures 
may
 include suspension of any certified person for reasonable periods, not exceeding a cumulative 30 days in any 12-month period."  (Emphasis added.)  55 ILCS 5/3-8013 (West 1996).  The use of the term "may" indicates that the sher

iff exercises his discretion to impose disciplinary measures of less than 30 days in any 12-month period.  Therefore, at a mini

mum, those measures within the discretion of the sheriff would appear to be bargainable.  

In addition, section 3-8014 of the Merit Law is not written in such an encompassing or exhaustive manner that it includes all procedural aspects of imposing discipline.  See 55 ILCS 5/3-8014 (West 1996).  Some procedural aspects associated with removal, demotion, or suspension have, therefore, likely been left to local discretion because they have not been detailed in the statute.  Consistent with our holding in 
BOG
 and section 7 of the Labor Act (5 ILCS 315/7 (West 1996)), if a procedure is not specified or precluded by statute, it can be supplemented and, therefore, should be bargainable.  

The first district's 
City of Markham
 decision, on which we partially rely, is noteworthy because it paid surprisingly little deference to Illinois' public policy favoring collective bargaining.  In addition, the holding in 
City of Markham
 is un

necessarily broad.  For instance, the narrow finding in 
City of Markham
, that an arbitrator lacked the authority to impose inter

est arbitration on a non-home-rule municipality because a non-

home-rule municipality lacks the power to abolish or amend statu

tory mandates (
City of Markham
, 299 Ill. App. 3d at 618, 701 N.E.2d at 155-56), is sound and demonstrates the incremental but effective development of labor law.  
City of Markham
 then unnec

essarily extends this narrow holding beyond its means by assert

ing that "the parties are precluded from bargaining over employee discipline altogether."  
City of Markham
, 299 Ill. App. 3d at 618, 701 N.E.2d at 155.  This finding is inconsistent with our previous holding in 
BOG
 and should not be adopted.  

The Merit Law provides opportunity for supplementation in areas (1) not specified by statute, and (2) where the sheriff has expressly been granted discretion.  Our decision in 
BOG
 sug

gests that we afford the parties the opportunity to (1) ascertain what these areas are and (2) bargain about them.  I respectfully suggest, therefore, that the more appropriate course of action would be to remand so that the parties can more adequately define what areas associated with employee discipline are subject to collective bargaining and what areas are precluded by the Merit Law.