RAY E. STEFFEN, Ex'r of the Estate of Donald Karnes, Deceased, *et al.*, Petitioners-Appellees, *v.* FRANK PAULUS *et al.*, Respondents-Appellants.

Fourth District   No. 4—83—0586

Opinion filed June 27, 1984.

Yoder, Yoder, Zanoni, Flynn, Prall & Willard, of Bloomington (Michael J. Flynn, of counsel), for appellants.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (William M. Goebel, of counsel), for appellee Illinois Wesleyan University.

Hanley, Traub & Hanley, of Fairbury (Harvey S. Traub, of counsel), for appellee Ray E. Steffen.

JUSTICE TRAPP delivered the opinion of the court:

Respondents, Frank and Viola Paulus, appeal from an order granting summary judgment in favor of petitioners, Ray Steffen, executor of the estate of Donald Karnes, and Illinois Wesleyan University. The issue involved in this appeal is the sufficiency of a notice to terminate a lease. We affirm.

On September 30, 1971, Karnes and Frank Paulus executed a 50-50 crop share lease, which required Paulus to farm 160 acres of Karnes' land. The lease term began March 1, 1972, and was to run for 99 years. The parties, however, contemporaneously executed a cancellation clause. It provided:

> "This lease may be cancelled annually by the tenant giving to the landowner written notice by November 1st of any year covering the succeeding crop year of his intention to discontinue farming operations and yield possession to the landowner. No payment of any sum of money will be due and payable in case of Tenant's termination of lease.
>
> This lease may be cancelled at the end of each five (5) crop year period, counted from the first effective crop year of the lease, by Donald Karnes, DURING HIS LIFETIME, giving written notice to the tenant by the November 1st of such year preceding the 6th, 11th, 16th, etc., crop years. That is, the first termination date, under these provisions, would be November 1, 1976, and thereafter at periodic five year intervals. The

Landowner shall pay the Tenant $4.00 per acre for all farmland leased at the time of such cancellation to reimburse the Tenant for costs incurred and for the privilege of such cancellation.

Following the death of the Landowner, the privilege of his cancellation is terminated and this lease is to run to its stated expiration. This nontermination provision is hereby made binding on the heirs, executors, administrators, trustees or assigns of the Landowner and such individuals and/or legal entities are hereby ordered, instructed and requested to honor all terms of this lease unless amended or revised by mutual agreement between the same and the then Tenant."

On October 19, 1973, the parties added another 85 acres to their lease. In addition, Paulus assigned his rights to himself and his wife, Viola. Another addendum was executed on January 6, 1976. It stated that defendants were to be designated farm managers and would receive a 70% share of the crop upon Karnes' death.

On October 16, 1978, Karnes executed a notice of cancellation "effective as of November 1, 1981." The notice stated, in part:

"You are hereby required to surrender possession of said premises to the undersigned on November 1, 1981.

This Notice of Termination is given during my lifetime and said Lease shall terminate on November 1, 1981, regardless of whether I am then living."

Respondents signed for receipt of the notice along with a $1,000 check covering the costs of cancellation on October 17, 1978.

Respondents did not surrender possession on November 1, 1981, and Karnes filed a declaratory judgment complaint seeking to have the lease declared terminated by the October 16, 1978, notice. On April 23, 1982, Karnes died. Steffen, executor of Karnes' estate, was substituted as petitioner. Illinois Wesleyan University, a devisee of an interest in the land under Karnes' will, also joined in the action as a petitioner. Petitioners moved for summary judgment, and on July 29, 1983, the trial court granted their motion declaring the notice of termination canceled the lease on February 28, 1982.

Although the lease term ran for 99 years, the cancellation clause in effect established a periodic tenancy for the parties. Respondents had a year-to-year lease, which renewed each year unless they had canceled before November 1 of the previous year, until the 99 years expired or Karnes canceled. Karnes, on the other hand, was bound to a series of five-year leases. After the expiration of each five-year period, the lease was renewed for another five years unless Karnes had given notice of termination by November 1 of the fifth year. Respond-

ents concede the notice of October 16, 1978, was timely. Instead, they maintain the notice was improper because it specified the wrong termination date. They conclude the notice was insufficient to terminate the lease.

Respondents contend the proper termination date was February 28, 1982, and not November 1, 1981, as Karnes stated in his notice. The cancellation clause itself states the first termination date was November 1, 1976. Adding five years, the second termination date would have been November 1, 1981. Defendants assert these dates are inconsistent with the remainder of the cancellation clause. The clause allowed Karnes to cancel the lease only at the end of each five-year crop period. They maintain a crop year in Illinois customarily runs from March 1 to the last day of February. They also point out that the lease began on March 1, and presumably, this was the start of the first crop year. The end of a five-year crop period, therefore, must end on the last day in February. Under respondents' interpretation, the cancellation clause is ambiguous. They argue the term "termination date" should be read as notification date because Karnes authored the lease, and any ambiguity should be construed against him. The trial court agreed with respondents.

■ We are not convinced an ambiguity exists. Merely because the lease began in March does not imply that a crop year must also begin in March. Although contrary to custom, the parties could have contracted to start the crop year in November. Under the contract, the annual settlement of costs and revenues was to be made in late November of each year. Assuming the parties did not intend to settle the year's accounts until after the end of each crop year, it is reasonable to consider November 1 as the start of each crop year. Moreover, the cancellation clause plainly states that November 1 is the termination date, and in a contract with general and specific provisions relating to the same subject, the specific provision controls. (*Ohio Casualty Insurance Co. v. Tyler* (1980), 85 Ill. App. 3d 410, 413, 407 N.E.2d 77, 80.) However, we need not decide if an ambiguity exists because we hold that even if the proper termination date was February 28, 1982, Karnes' notice was sufficient to terminate the lease on that date.

Respondents argue the notice is void merely because it required termination on November 1, 1981, rather than February 28, 1982. Under the traditional common law rule, a notice to quit must terminate a periodic tenancy on the last day of the tenancy, and a notice to quit any earlier will be ineffective. (*Finkelstein v. Herson* (1893) 55 N.J.L. 217, 26 A. 688.) A notice that demanded possession even three days early, therefore, was void at common law. (*Gill v. Gill* (1911), 161 Ill.

App. 221.) The rule served no purpose other than the common law's penchant for formalism and procedural precision. *Harry's Village, Inc. v. Egg Harbor Township* (1982), 89 N.J. 576, 586, 446 A.2d 862, 867.

The traditional rule, however, has been abandoned. (See, *e.g., Mercer County Agriculture Society v. Barnhardt* (Pa. Super. 1983), 459 A.2d 811; *S.D.G. v. Inventory Control Co.* (1981), 178 N.J. Super. 411, 429 A.2d 394; *Kester v. Disan Engineering Corp.* (Okla. App. 1979), 591 P.2d 344.) It seems unduly technical to deprive a notice to terminate a periodic tenancy of any legally operative effect solely because the notice designates as the termination date a date on which the tenancy cannot be terminated. (Restatement (Second) of Property, Landlord & Tenant, Reporters Notes sec. 1.5, at 36 (1977).) The Restatement provides the proper rule to be followed:

> "In the absence of controlling provisions in the lease *** if the date stated in the notice for termination is not the end of a period or is too short a time before the end of a period, the notice will be effective to terminate the lease at the earliest possible date after the date stated." Restatement (Second) of Property, Landlord & Tenant sec. 1.5, Comment *F*, at 25 (1977).

The result of this rule is both fair and reasonable. The purpose underlying a notice of requirement is to provide the parties with sufficient time to adjust their affairs before the actual termination. (*Harry's Village, Inc. v. Egg Harbor Township* (1982), 89 N.J. 576, 586, 446 A.2d 862, 867.) If the notice informs the tenant that the landlord wants him to quit the premises, then the question should not be the validity of the notice, but rather, how soon the tenant must leave. *T.W.I.W., Inc. v. Rhudy* (1981), 96 N.M. 354, 358, 630 P.2d 753, 757.

In this case, the lease did not require the notice to state the proper termination date. The lease only required notice before November 1, 1981, which respondents concede Karnes provided. In fact, respondents knew of Karnes' desire to end the lease more than three years before they had to surrender possession. The notice was sufficient regardless of whether November 1, 1981, or February 28, 1982, was the proper termination date.

For the foregoing reasons, the order granting summary judgment in favor of petitioners is affirmed.

Affirmed.

GREEN and MILLER, JJ., concur.