**MACKE LAUNDRY SERVICE LIMIT-
ED PARTNERSHIP, Plaintiff,**

v.

**ALLECO INC., Defendant.**

**Civ. A. No. R–88–3081.**

United States District Court,
D. Maryland.

Feb. 28, 1989.

Richard J. Wertheimer, Melvin C. Garbow, Hadrian R. Katz, Philip S. Kushner, and Arnold & Porter, Washington, D.C., for plaintiff.

A. Raymond Randolph, Donald H. Green, Susan L. Launer, and Shira D. Modell, Pepper, Hamilton & Scheetz, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Before the Court is plaintiff's motion in the above-entitled case for summary judgment. The motion has been fully briefed, and the Court now rules without need for a hearing, pursuant to Local Rule 6(E) (D.Md.1988). For the reasons set forth below, the motion will be granted.

In 1987, defendant's and plaintiff's predecessors-in-interest entered into an "Agreement and Plan of Merger" (the "Agreement"). The Agreement governed the sale of Macke Laundry Services, Inc. ("MLS"). MLS is a coin-operated laundry business which installs and operates coin-operated washing and drying machines, primarily in apartment buildings. MLS regularly collects the coins from the machines in each apartment building and pays to the owner thereof a percentage of the collected money as a commission.

Shortly before the closing of the sale governed by the Agreement, defendant collected all coins from its machines and retained the entire balance of the collected money. However, after the closing date of the sale, plaintiff as owner of MLS was required to pay to the apartment owners their accrued commissions based on the coins collected by defendant. The instant dispute is over the question: to which party does the Agreement allocate responsibility for such commissions?

In its motion before the Court, plaintiff contends that the Agreement is clear and unambiguous with respect to defendant's liability for the disputed commissions. Defendant argues that summary judgment is inappropriate for various reasons: (1) that the Agreement imposes the burden for the disputed commissions on plaintiff or, at the very least, is ambiguous with respect to which party bears said burden; (2) that the amount of accrued commissions for which indemnification is allowed under the contract is disputed; and, (3) that potential jurisdictional problems should be resolved before this Court enters judgment. The Court finds all of defendant's arguments unpersuasive.

### Standards for Summary Judgment

Summary judgment shall be granted only if it appears that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. All evidence shall be viewed in the light most favorable to the non-moving party. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). But the non-moving party must meet the burden of proof by showing more than the existence of a scintilla of evidence; evidence must be produced sufficient for a reasonable jury to find in the non-moving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Once the moving party has pointed out the absence of an essential element of the non-moving party's case, the burden is on the non-moving party to make a sufficient showing to create a genuine issue of fact

for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## Discussion

### A. *Liability for the Commissions*

■ The Agreement expressly allocates responsibility for MLS's liabilities between plaintiff and defendant. *Permitted liabilities* are those to be borne by plaintiff, and *excluded liabilities* are those to be borne by defendant. The Agreement sets forth seven express permitted liabilities, all other liabilities are excluded liabilities. *See* Agreement at section 10.6(m). The issue therefore is whether the disputed commissions are permitted or excluded liabilities under the Agreement.

Section 10.5(c) defines which commissions are to be considered permitted liabilities:

> (c) accrued and unpaid commissions which are due and payable to lessors under the express terms of the Laundry Leases, to the extent such commissions (i) are payable with respect to uncollected cash in coin boxes, and (ii) are reflected or reserved against on the Liabilities Statement.

If this provision does not apply to the disputed commissions, then such commissions are excluded liabilities to be borne by defendant. Thus, the question is whether the provision is so clear and free of ambiguity that summary judgment is appropriate.

■ A contract must be read and construed as a whole so as to determine the intention of the parties and give effect thereto. *See, e.g., Blackhawk Hotel Associates v. Kaufman,* 85 Ill.2d 59, 51 Ill.Dec. 658, 660, 421 N.E.2d 166, 168 (1981); *Cadem v. Nanna,* 243 Md. 536, 543, 221 A.2d 703 (1966). Where a contract is clear and unambiguous, however, there is no room for construction, as the parties are deemed to have intended what they expressed. *See, e.g., Reynolds v. Coleman,* 173 Ill. App.3d 585, 123 Ill.Dec. 259, 264–65, 527 N.E.2d 897, 902–03 (1988); *Devereux v. Berger,* 253 Md. 264, 269, 252 A.2d 469 (1969). A court may not redraft the terms of a contract when they are clear and unambiguous simply to avoid hardship or because one of the parties has become dissatisfied therewith. *See, e.g., Schroud v. Van C. Argiris and Co.,* 78 Ill.App.3d 1092, 34 Ill.Dec. 428, 431, 398 N.E.2d 103, 106 (1979); *Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 350, 322 A.2d 866 (1974). A contract is not ambiguous merely because the parties disagree with respect to the meaning of a provision thereof; rather, a contract or provision thereof is ambiguous only where it is susceptible of more than one reasonable interpretation. *See, e.g., Board of Governors of State Colleges and Universities v. Illinois Educational Labor Relations Board,* 170 Ill.App.3d 463, 120 Ill.Dec. 728, 731, 524 N.E.2d 758, 761 (1988); *Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187 (1980).[1]

Section 10.5(c) standing alone is certainly clear and unambiguous. Section 10.5(c) unequivocally provides that accrued and unpaid commissions due under the MLS leas-

---

1. While the parties do not directly address the issue, there is some question as to whether the law of Illinois or Maryland governs this case. A federal court sitting in diversity jurisdiction must apply the conflicts of law rules of the state in which that court sits. *Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The well-settled rule in Maryland is that the law of the place of contracting governs questions relating to the validity, effect, and interpretation of a contract. *See, e.g., Scott v. First National Bank of Baltimore,* 224 Md. 462, 465, 168 A.2d 349 (1962). Section 13.11 of the Agreement provides that the Agreement shall be governed and controlled by the laws of the State of Illinois. *Agreement* at 70. While Maryland law allows the parties to a contract to agree on which jurisdiction's laws will govern their agreement, *Kronovet v. Lipchin,* 288 Md. 30, 43, 415 A.2d 1096 (1980), the power to select the governing law is not unlimited and will only be given effect where there is a substantial relationship between the forum selected and the issue to be resolved. *Id.* at 46, 415 A.2d 1096. The Court does not have sufficient information at this time to decide whether the law of Illinois is applicable to the instant motion. However, the resolution of this issue is immaterial to the resolution of the motion before the Court because the laws of Maryland and Illinois are in accord with respect to the interpretation of clear and unambiguous contract provisions such as section 10.5(c).

es will be a *permitted liability* only if two conditions are met: first, such commissions are payable with respect to uncollected cash in coin boxes, and, second, that such commissions are reflected or reserved against on the liabilities statement. Because the disputed commissions are payable with respect to cash that as of the closing date of the sale governed by the Agreement had already been collected by defendant, section 10.5(c) clearly and unambiguously does not apply. Accordingly, the disputed commissions are excluded liabilities for which defendant is obligated to indemnify plaintiff.

However, defendant advances various arguments to the effect that section 10.5(c) is not clear and unambiguous. The Court finds these arguments unpersuasive, and will address them seriatim.

Defendant argues that the word "and" which separates the subparts of section 10.5(c) is more reasonably read as "or." Such a reading of section 10.5(c) would make plaintiff liable for commissions due on uncollected money *or* reflected or reserved against in the liabilities statement. The Court recognizes that courts are willing under appropriate circumstances to read "and" as "or." *See, e.g., Jeffrey–Sneider Maryland, Inc. v. LaVay,* 28 Md. App. 229, 239, 345 A.2d 79 (1975); *see generally,* 17 Am.Jur.2d *Contracts* §§ 278, 283. The parties agree, however, that "the Agreement was negotiated between two sophisticated corporate entities of relatively equal bargaining power, and [that] each side was represented by legal counsel." *Defendant's Reply Memorandum in Support of its Motion to Compel Arbitration and to Stay Proceedings* at 4. Accordingly, the Court will not take such grammatical liberties with the Agreement absent a most compelling showing by defendant. Defendant's support for its alternate construction of section 10.5(c) is that the parties intended for the plaintiff to assume liability for all commissions due under the MLS leases. However, such an intent cannot be deciphered merely from section 10.5. Therefore, defendant's alternate construc-

tion of section 10.5(c) is reasonable only if defendant is correct in its claim, discussed below, that the agreement as a whole demonstrates that, or at least creates an ambiguity with respect to whether, plaintiff accepted responsibility for all commissions due under the MLS leases.

First, defendant argues that the Agreement clearly distinguishes between day-to-day operational obligations of MLS (section 10.5) and extraordinary and non-routine obligations of MLS (section 10.6), and that because the disputed commissions fall under the category of ordinary operational obligations, they are permitted liabilities intended be encompassed by section 10.5(c). However, this distinction between sections 10.5 and 10.6 does not withstand closer scrutiny. The distinction reflects more defendant's *ex post* attempt to characterize the difference between the categories of liabilities than it indicates any intentional fine line that separates sections 10.5 and 10.6. For certain items there is an overlap between the sections; in such cases, whether the liability is excluded or permitted is determined by the amount thereof or the seller's representations with respect thereto.[2] In addition, the excluded liabilities include everything not expressly enumerated as a permitted liability. Sections 10.5 and 10.6 expressly define how certain liabilities will be classified; the Agreement makes no attempt to define a simple formula (such as the one suggested by defendant) which can be used to classify a certain liability. The choices made indicate a negotiation process that encompassed far more than fitting each item on one side of defendant's proffered demarcation line.

Second, defendant argues that its construction of section 10.5(c) is confirmed by the language of section 4.3(c) of the Agreement. Section 4.3(c) provides in pertinent part:

> The Company has no obligation to pay commissions with respect to any of the Laundry leases other than commissions reflected on the Company's books and records and commissions coming due

---

2. *See* §§ 10.6(d), (e) and (j).

with respect to uncollected money in the Machines' coin boxes.

Agreement at 22. Section 4.3(c) is merely a general representation by the seller that the buyer has no obligation to pay commissions other than those listed therein. However, it is section 10.5(c) which defines those commissions which the buyer is willing to accept responsibility for; section 10.5(c) specifically addresses which party will bear the responsibility for accrued commissions as of the closing date. There is, therefore, no inherent conflict between these two sections that creates an ambiguity in section 10.5(c) such that summary judgment is inappropriate.

Third, defendant argues that the disputed commissions, if not covered by section 10.5(c), are permitted liabilities under section 10.5(d). Section 10.5(d) includes as permitted liabilities:

> liabilities and obligations of the Company under the executory portion or written and oral laundry leases, or ... commitment of any kind by which the Company is bound on the closing date.

Agreement at 49. Defendant contends that the disputed commissions were within the executory portion of the MLS leases. However, there is a clear difference between accrued and executory obligations, and that difference accounts for the existence of two types of permitted liabilities that relate to commissions. Section 10.5(c) refers to accrued commissions as of the closing date; section 10.5(d) refers to commissions that will come due under the portion of any existing MLS lease that remains to be performed after the closing date. Such a reading of these sections is compelled not only by the clear and unambiguous language of these sections, but also by the well-settled rule of contract construction that a specific provision will control over a general provision where such provisions are arguably in conflict. *See, e.g., Steffen v. Paulus,* 125 Ill.App.3d 356, 80 Ill.Dec. 675, 678, 465 N.E.2d 1021, 1024 (1984); *Federal Insurance Co. v. Allstate Insurance Co.,* 275 Md. 460, 472, 341 A.2d 399 (1975). Under that rule of construction, section 10.5(c), which specifically addresses accrued commissions, controls the disposition of the disputed commissions.

Finally, defendant attempts to offer assorted extrinsic evidence and arguments that it contends support a conclusion that its construction of the Agreement is the only reasonable one. However, such evidence is relevant to determining the intent of the parties with respect to an ambiguous contract; such evidence is not material with respect to the question of whether an ambiguity exists. Accordingly, the Court will not reconstruct the clear language section of 10.5(c) to accommodate defendant's contrary interpretation thereof.

In short, the Court finds that section 10.5(c) is not applicable to accrued commissions owed with respect to cash collected by the seller as of the closing date. The Court finds that the clear and unambiguous language of the Agreement compels such a result. Therefore, the disputed commissions are excluded liabilities for which defendant must indemnify plaintiff.

## B. *Indemnification*

■ It is undisputed that the disputed commissions total $1,400,919.00. Defendant contends, however, that the amount for which it must indemnify plaintiff is limited under the Agreement to amounts in excess of $350,000.00. Further, defendant requests that it be allowed to conduct discovery on this issue if plaintiff disputes such an interpretation of the Agreement.

The Agreement is clear and unambiguous with respect to the indemnification owed with respect to the disputed commissions. Section 10.2 sets forth defendant's indemnification obligations. Defendant must indemnify plaintiff for all costs resulting from or arising out of:

> (a) *any inaccuracy in a representation or warranty* made by ABC to Parent herein or in any closing document delivered to Parent in connection herewith;
>
> (b) the failure of the ABC to comply with, or the breach by ABC of, any of the covenants of this Agreement to be performed by ABC (including, without limitation, this Article X);

(c) *the failure of ABC to pay and perform when due any Excluded Liabilities* (as herein defined); and ABC agrees to pay and perform all such Excluded Liabilities when due; ...

Agreement at 47 (emphasis supplied). Section 10.3 of the Agreement sets forth the limitations on defendant's indemnification obligations:

(a) Parent and the Company shall not be entitled to indemnification for any breach by ABC of any *of its representations and warranties* until the total amount for which Parent and the Company are entitled to such indemnification, but for this paragraph (a), exceeds $350,000, and then only for the amount in excess of $350,000.

\* \* \* \* \* \*

(c) The aggregate of ABC's indemnification obligation under Section 10.2 shall not exceed the sum of the Merger Price plus $8,000,000.

*Id.* at 47–48 (emphasis supplied). Section 10.3(a) clearly and unambiguously provides that the limitation imposed thereby applies only to indemnification required for costs resulting from or arising out of inaccuracies in representations or warranties under section 10.2(a). Indemnification under section 10.2(c) is subject only to the general aggregate limitation set forth in section 10.3(c).

Plaintiff is correct that section 10.3(a) is irrelevant to the instant litigation. Moreover, defendant has in no way indicated that its aggregate indemnification obligation will be surpassed by a judgment entered in plaintiff's favor for the $1,400,919.00 in disputed commissions. Therefore, there is no ambiguity or dispute as to which further discovery is necessary.

## C. *Need for Discovery*

Defendant further argues that summary judgment is inappropriate before the parties have an opportunity to conduct discovery on various issues. However, the Court finds these arguments unpersuasive.

First, defendant claims that the complexity of the issues underlying the instant case are such that discovery is necessary with respect to numerous "key relevant issues." However, the Court has found that the Agreement is clear and unambiguous on its face with respect to defendant's liability to plaintiff for indemnification with respect to the disputed commissions. The complex issues referred to by defendant do not alter this Court's findings with respect to the unambiguous nature of the Agreement as it applies to the instant litigation. Thus, further discovery would be wasteful and immaterial.

■ Second, defendant argues that discovery is necessary with respect to the relationship between plaintiff and Macke Acquisition Co. ("Macke CO."), the purchaser under the Agreement. In particular, defendant questions whether Macke Co. is an indispensable party to the instant litigation. The Court finds that the Agreement is sufficiently clear to resolve the instant dispute and that the necessary parties are before the Court. The Agreement provides that the seller must indemnify the laundry business itself for any excluded liabilities paid by the laundry business. Agreement at §§ 10.2 and 10.8. This case involves precisely such a situation. Plaintiff's entitlement to the indemnification and defendant's responsibility therefor are clear under the Agreement. Macke Co.'s participation is simply not necessary to resolving the instant dispute.

■ Finally, defendant suggests that there might not be complete diversity in this case and, therefore, that this Court might not have jurisdiction to enter summary judgment. *Cf. Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806). For federal jurisdictional purposes, a corporation is deemed a citizen of the state of its incorporation and the state in which it has its principal place of business, 28 U.S.C. § 1332(c), and an unincorporated organization is treated as having the citizenship of each of its members, *United Steelworkers v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Plaintiff is a limited partnership the membership of which consists of three general partners (Macke Laundry Service, Inc., MAS Laun-

dry, Inc. and JPS Laundry, Inc.) and one limited partner (David Schoenberg). The verified statement of Matthew A. Spagat offered by plaintiff in support of its motion establishes that David Schoenberg is a citizen of Illinois, that the general partners of plaintiff are all Delaware corporations with their principal places of business in Illinois, and that plaintiff is a Delaware limited partnership whose principal place of business is in Illinois. Because defendant is a citizen of Maryland, *see* Answer at para. 5, the Court is satisfied that complete diversity exists and, therefore, that the Court may maintain diversity jurisdiction over the instant litigation. Defendant's mere speculation that complete diversity may be lacking is not sufficient to warrant further discovery or to create a genuine issue of material fact. Therefore, summary judgment is appropriate.

Accordingly, for the reasons set forth herein, it is this 28th day of February, 1989, by the United States District Court for the District of Maryland,

ORDERED:

That the motion for summary judgment of plaintiff Macke Laundry Service Limited Partnership shall be and the same hereby is GRANTED.

JUDGMENT ORDER

In accordance with the Court's Memorandum and Order dated February 28, 1989, and filed in the above-entitled case, it is this 28th day of February, 1989, by the United States District Court for the District of Maryland,

ORDERED and ADJUDGED:

That judgment is hereby entered in favor of plaintiff and against defendant in the amount of $1,400,919.00 plus interest.