**In re Linda Denise FINKLEY, Debtor.**

**Bankruptcy No. 96 B 18685.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 21, 1996.

Dana K. O'Brien and Scott E. Turner, Chicago, IL, for Chicago Housing Authority, Office of the General Counsel.

David E. Haracz, Legal Assistance Foundation of Chicago, Chicago, IL, for debtor.

Craig Phelps, Chapter 13 Trustee, Chicago IL.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 13 case is before the court on a landlord's motion for relief from the automatic stay. The motion seeks authorization to continue a state court eviction proceeding, in which the landlord alleges that the debtor's tenancy terminated due to nonpayment of rent. The debtor has responded that, under the Bankruptcy Code, she has the right to cure any default under her lease and assume it, so that relief from the stay would be inappropriate. As discussed below, the point at which a lease terminates for default in rental payments, under Illinois law, is after the giving of a proper demand for rent, the tenant's failure to timely pay the demanded amount, and the filing of an action by the landlord to obtain possession, all without waiver of the default by the landlord. In the present case, there is a dispute as to whether these prerequisites to lease termination were met. Thus, the court cannot grant relief from the stay on the ground that the debtor's lease terminated. Nor is there any other ground for relief from stay.

However, viewing the landlord's motion as a request that this court abstain from determining termination of tenancy, so as to allow the state court to rule on the issue, it appears that abstention would be an appropriate exercise of this court's discretion under 28 U.S.C. § 1334(c)(1). Accordingly, this court will abstain from determining whether the debtor's tenancy terminated prior to the filing of this case, and allow that issue to be determined in the pending state court action.

### Jurisdiction

The pending motion for relief from the automatic stay is specifically authorized by Section 362(d) of the Bankruptcy Code, and exists only in the context of a bankruptcy case. It is therefore a proceeding "arising under title 11" and "arising in a case under title 11," as set forth in 28 U.S.C. § 1334(b). *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir.1991), *cert. dismissed*, 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992). The district court has jurisdiction over such proceedings, and may refer them to bankruptcy judges, pursuant to 28 U.S.C. § 157(a). By General Rule 2.33(a), the District Court for the Northern District of Illinois has made such a reference. Bankruptcy judges are given authority to enter appropriate orders and judgments in "core proceedings" arising in bankruptcy cases by 28 U.S.C. § 157(b)(1). The pending motion is a core proceeding. 28 U.S.C. § 157(b)(2)(G). Similarly, a motion seeking abstention pursuant to 28 U.S.C. § 1334(c)(1) can arise only in the context of a bankruptcy case, and hence is a "core proceeding" arising in a case under Title 11. 28 U.S.C. § 157(b)(2)(A); *see Branham v. Davis (In re Branham)*, 149 B.R. 406, 408 (Bankr.W.D.Va. 1992) (under a general order of reference from the district court, a bankruptcy judge

has jurisdiction to determine whether to abstain).

## Findings of Fact

The debtor in this Chapter 13 case, Linda Finkley, lives in an apartment owned by the Chicago Housing Authority ("the CHA"), which she has rented under a renewable yearly lease since 1988. In early 1995, her rent was $98 per month. On February 3, 1995, the CHA served Finkley with a notice demanding payment of $1,113.20 in past due rent and charges. The notice stated that if this sum was not paid within 14 days of the service of the notice, Finkley's lease would "be terminated on the day following the expiration of said 14 days." Thereafter, on March 7, 1995, the CHA filed an action in state court to obtain possession of Finkley's apartment, pursuant to 735 ILCS 5/9–101 to 5/9–321 (West 1994), the Illinois Forcible Entry and Detainer Act. Finkley responded to this action with an answer denying that the CHA was entitled to possession of her apartment and asserting several affirmative defenses and counterclaims. On January 16, 1996, the matter was settled. Finkley and the CHA agreed to entry of a court order establishing an amount of rental arrearages that Finkley would pay in installments, together with her regular monthly rental payments. The order provided for dismissal of the forcible action without prejudice; if Finkley defaulted in any of the payments required by the order, the CHA was authorized to reinstate the case. The order further provided that, upon a showing of such a default, the CHA "shall be granted possession" of Finkley's apartment.

In May, 1996, Finkley did not make a payment required by the agreed order, and on July 2, 1996, the CHA reinstated its forcible case against her. The CHA presented a motion for summary judgment in the case, which was to be heard on July 19, 1996.

On July 18, 1996, Finkley filed the pending bankruptcy case, and on July 26, filed a Chapter 13 plan proposing that her lease with the CHA be assumed. On August 23,

the CHA responded with the pending motion for relief from the automatic stay, seeking to continue its forcible action. This court denied relief from the stay on October 10, but gave the parties an opportunity to address a related question—whether the court should abstain from determining whether Finkley's tenancy had terminated prior to the filing of the bankruptcy case, in favor of a determination by the state court. The parties have briefed that question, and now all of the issues raised by the CHA's motion are ready for ruling.

## Conclusions of Law

*Background: the assumption of residential leases in Chapter 13; Robinson v. Chicago Housing Authority.* The dispute between Linda Finkley and the CHA has its origin in Section 365(a) of the Bankruptcy Code (Title 11, U.S.C., "the Code"). That subsection generally provides that a trustee may, "subject to the court's approval ... assume ... any ... unexpired lease of the debtor." [1] This power to assume leases is extended to debtors in Chapter 13 cases by Section 1322(b)(7), which allows a Chapter 13 plan to provide, subject to Section 365, for assumption of "any ... unexpired lease of the debtor," and Finkley's plan proposes such an assumption of her lease with the CHA. However, the CHA contends that Finkley's lease terminated when she failed to pay the rent demanded in its notice, and that a terminated lease, being "expired," cannot be assumed under Section 365(a). Finkley, on the other hand, argues that because there was no order of possession issued by the state court at the time she filed her bankruptcy, her lease was still in effect, unexpired, and subject to assumption.

A 1995 decision of the Seventh Circuit Court of Appeals, *Robinson v. Chicago Housing Authority*, 54 F.3d 316 (7th Cir. 1995), arose from a very similar factual situation, and sets the background for resolution of the pending dispute. *Robinson*, like the present case, involved a Chapter 13 bankruptcy filed by a debtor who had allegedly defaulted in payments due under an apart-

---

**1.** Section 365(b) provides that there must be provision for the cure of defaults before an unexpired lease may be assumed, and thus makes clear that there can be assumption of an unexpired lease even though the debtor has defaulted in rental payments at the time of the assumption.

ment lease with the CHA, and who had been served with a default notice, had not paid the sums demanded in the notice within the specified time, and had been made a defendant in a forcible entry and detainer action. As in the present case, the debtor in *Robinson* sought to assume the lease, and the CHA moved for relief from the automatic stay to pursue the forcible action. The only factual difference—and it is an important one—was that in *Robinson,* unlike the present case, the CHA had obtained a judgment of possession in the forcible action prior to the time of the bankruptcy filing. In *Robinson,* the bankruptcy judge granted the CHA's motion for relief from the automatic stay, and the debtor appealed, first to the district court, which affirmed, and then to the Seventh Circuit.

In affirming the district court, the Seventh Circuit set forth a number of rulings that guide the decision here.

- The court interpreted Section 365 of the Code to prohibit assumption of any lease under which the tenant's rights in the property are ended, whether through expiration of the term of the lease, by termination for nonpayment of rent, or otherwise.

> The question is whether the lease has ended under state law, either through eviction proceedings, the running of the stated term of the lease or through other means that otherwise legally sever the landlord-tenant relationship. In this analysis, any method that fully severs the rights of the tenant in the property renders the lease expired; the only question is at what point in time the severance is final and complete.

54 F.3d at 319. "[F]ederal bankruptcy law draws no meaningful distinction between 'expired' and 'terminated' residential leases. . . . [T]he federal law allowing 'unexpired' leases to be assumed calls for a determination whether a lease has ended under state law." 54 F.3d at 320.

- The court determined that a lease is ended under state law "when the tenant is no longer entitled to possession." 54 F.3d at 321. Thus, the court rejected distinctions drawn under Illinois law between "expiration" and "termination" because these distinctions did not bear on the tenant's right to possession. 54 F.3d at 320–21.[2]

- The court set forth a two-part test for determining when the tenant's right to possession had ended under state law. Initially, termination requires that the landlord "must have taken all of the necessary procedural steps to repossess the premises." 54 F.3d at 321. The court explained this first part of the test by distinguishing between the existence of an unconditional right on the landlord's part to terminate the lease, and the actual exercise of that right. Prior to the time that the landlord actually exercises a right to terminate, the tenant's right to possession is preserved. Thus, "termination cannot occur until all the essential procedural steps have actually been taken." *Id.* Next, under the second part of the test, termination can only take place after the tenant "no longer has legal recourse to revive the lease." *Id.* In explaining this part of the test, the court cited decisions from other states, under whose laws a tenant may take steps to revive a tenancy even after the landlord has done everything necessary to have the tenant's possession terminated. *Id.* The court summarized the two-part test as follows: "In light of these principles, we must determine whether the landlord here has taken the required steps under Illinois law and whether the tenant has any recourse still available under state law." *Id.*

---

**2.** A similar distinction was drawn in *Elliott v. LRSL Enterprises, Inc.,* 226 Ill.App.3d 724, 731, 168 Ill.Dec. 674, 678, 589 N.E.2d 1074, 1078 (1992), in which the court found that an agreed order terminating the "tenancy" of a tenant did not end the tenant's duty to pay rent to the end of the lease term, as the lease itself provided: "[T]he termination of a tenancy is a termination of the tenant's right of possession in the property. . . . It is not an adjudication of one's rights under a lease contract and does not terminate the privity of contract between the landlord and the tenant when the lease contains a provision to the contrary." Thus, the ruling of the Seventh Circuit in *Robinson* can be stated as follows: a lease is expired, for purposes of the right to assume under Section 365, when the debtor's tenancy is terminated, even though other aspects of the lease agreement continue.

• The court outlined five steps in the process of terminating a tenant's right to possession under Illinois law:

[T]he first essential step is that the tenant must be delinquent in her rent. See S.H.A. 735 ILCS 5/9–209 (1994). Second, the landlord must notify the tenant, in writing, that the rent must be paid within no less than five days. *Id.* Third, the specified time period mentioned in the notice must pass without tender of payment by the tenant. *Id.* Fourth, the landlord must sue for possession or maintain ejectment and obtain a judgment for possession. *Id.* Fifth, and finally, a writ of possession issues pursuant to the judgment for possession.

54 F.3d at 321–22.

• The court determined that after the fourth of these steps—the entry of a judgment for possession—the tenancy has terminated under the court's two-part test:

At this fourth step in the eviction process a landlord has surely taken the steps requisite for termination. Nor is there any recourse left for the tenant to revive the lease. Thus, absent a waiver of forfeiture by the landlord, the lease may not be deemed "unexpired" beyond that point.

54 F.3d at 322 (footnote omitted). This holding disposed of the case before the court, since in *Robinson,* as noted above, a judgment for possession had been entered prior to the bankruptcy filing. Thus, the court found that the debtor could not assume the lease, and that relief from the automatic stay was appropriate to allow the CHA to conclude its repossession of the debtor's apartment.

• In the final point relevant to the present case, the *Robinson* court discussed an issue not necessary to its decision: whether a lease could be found to have terminated after the third step in the eviction process—the passing of the period specified in a notice of default without payment by the tenant of the sum demanded to cure the default. In this connection, the court cited two district court decisions—*Cunningham v. Lifelink Corp.,* 159 B.R. 230, 233–34 (N.D.Ill.1993), and *Chart House, Inc. v. Maxwell (In re Maxwell),* 40 B.R. 231, 236–37 (N.D.Ill.1984)—

stating that lease termination did occur at this stage. 54 F.3d at 322. However, the court did not find these decisions compelling, because they relied on state court cases that "do not explicitly determine that the lease, absent affirmative action to terminate on the part of the landlord, is abrogated at that point." *Id.* Accordingly, the court remarked that whether "a lease is ended prior to a judgment of possession seems questionable." *Id.*

*The point at which, under Illinois law, a tenant's right to possession is ended; Jefferys v. Hart.* The facts of the present case raise precisely the question left unanswered by the *Robinson* decision: whether a tenant's right to possession can be terminated prior to the entry of judgment of possession. This question must be answered by applying *Robinson's* two-part test, which requires both (1) that the landlord have performed all of the procedural steps necessary to effect an end to the tenancy and (2) that the tenant can no longer take any action to revive the tenancy.

The second part of the test is the easier to apply. Once a tenant has defaulted in payment of rent, and the landlord has given whatever demand for rent is required, and the tenant has failed to pay the demanded rent within the required time, there is nothing the tenant can do to prevent a termination of the tenancy. The tenant cannot require the landlord to accept the rent after the time specified in the notice has passed. *See Chicago Hous. Auth. v. Taylor,* 207 Ill. App.3d 821, 825, 152 Ill.Dec. 730, 733, 566 N.E.2d 417, 420 (1990) (landlord properly refused late tender of rent payments, consistent with its position that the lease was terminated); *Elizondo v. Perez,* 42 Ill.App.3d 313, 314, 1 Ill.Dec. 112, 113, 356 N.E.2d 112, 113 (1976) (same). And, as the court pointed out in *Robinson,* there is no provision of Illinois law granting courts the power to grant relief to tenants from the forfeiture of their right to possession. 54 F.3d at 322 n. 2. A defaulting tenant's last opportunity to require continuation of tenancy is to pay the past due rent within the time specified by the notice of default.

■ However, the first part of the *Robinson* test is not satisfied merely by the passing of the period stated in a demand for rent without payment by the tenant. This is because, after the passing of the notice period, the landlord may still consider the lease in effect, and require the tenant to comply with all of its terms. This precise question was addressed by the Illinois Appellate Court in *Jefferys v. Hart*, 197 Ill.App. 514 (1916). Although it was decided 80 years ago, *Jefferys* dealt with the same notice provision of Illinois law that is operant here—the statute providing for a minimum five-day notice to cure a default in rent payments, currently codified as 735 ILCS 5/9–209 (West 1994). In its present form, the statute reads as follows:

> A landlord or his or her agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated. If the tenant does not within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer, or maintain ejectment without further notice or demand.[3]

In *Jefferys*, a tenant had given a security deposit to his landlord in an amount several times the monthly rent, and then defaulted in a single month's payment. The landlord immediately served a five-day notice in conformity with the statute. Within the same month, and before the landlord had filed any complaint to obtain possession, the tenant vacated the premises, tendered to the landlord a pro rata portion of that month's rent, and demanded return of the security deposit. The landlord refused the tendered rent and kept the deposit, claiming it was completely offset by damages arising from lost rents after the tenant's departure. The tenant sued for recovery of the deposit. In the trial court, the tenant prevailed, on the theory that at the end of the period specified in the demand, the lease terminated, and with it, any obligation of the tenant to pay rent.

The appellate court reversed, interpreting the statute as not providing for automatic termination of tenancy with the failure of the tenant to pay rent within the time demanded in a notice. Rather, the court held, because the statute states that the landlord "may consider" the lease ended at that point, the landlord still retains the option of considering the lease in effect. Otherwise, the court pointed out, the phrase "may consider the lease ended" would be surplusage. 197 Ill. App. at 518–19. Thus, the court announced the following interpretation of the statute:

> [I]t is the privilege of the landlord, after serving the five-day notice followed by the tenant's noncompliance, to say whether or not he wishes to forfeit the lease, and to bring forcible entry and detainer proceedings or an action in ejectment. His election to do either would be an affirmative act showing that he considered the lease ended. Until an act is performed by the landlord in pursuance to said notice, which could be regarded as an election to consider the tenancy ended, the tenant has no right to vacate the premises. . . .

197 Ill.App. at 519. Accordingly, the court remanded for consideration of the damages that the landlord had incurred after the property was abandoned by the tenant.

In what appears to be the only decision to consider this issue after *Jefferys*, the same interpretation was given to the statute:

> [I]f the tenant fails to pay his rent in compliance with the 5–day notice, the landlord shall then have the right to sue for possession, in either of the forms of action mentioned, and in so doing exercises the right the statute gives him, to consider the

---

3. In its original enactment, as Section 8 of the Landlord and Tenant Act, 1873 Ill.Laws 119, this provision had the following language:

> The landlord or his agent may, at any time after rent is due, demand payment thereof, and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than five days after the service thereof, the lease will be terminated. If the tenant shall not, within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer, or maintain ejectment without further notice or demand.

lease ended, and thus bring it to a termination. But until the landlord performs one of these acts the tenant may not escape further obligations under the lease, by himself electing to terminate it, and moving out.

*Rosenberg v. Holmes,* 239 Ill.App. 226, 229 (1926).

Under this interpretation of Illinois law, it is not the passage of a period specified in a demand for rent, without payment, that terminates a tenant's right to possession. Rather, it is the landlord's commencement of an action to obtain possession.

■ On the other hand, once the landlord has commenced that action—exercising the right accorded by the statute to consider the lease terminated—all of the statutory prerequisites for termination of the tenancy have taken place. At the point of filing the action for possession, the landlord has satisfied the second part of the *Robinson* test.[4]

This conclusion differs from statements made in the district court decisions cited in *Robinson,* and in two recent bankruptcy court decisions construing Illinois law, to the effect that a lease does terminate as soon as a notice period passes without payment of the demanded rent. However, in each of these cases, the landlord in fact had instituted an action to obtain possession, and so the actual result in these cases is consistent with the holding here. *Cunningham v. Lifelink Corp.,* 159 B.R. 230, 233–34 (N.D.Ill.1993);

*Chart House, Inc. v. Maxwell (In re Maxwell),* 40 B.R. 231, 236–37 (N.D.Ill.1984); *In re Gant,* 201 B.R. 216, 223 (Bankr.N.D.Ill. 1996); *In re Williams,* 201 B.R. 948, 951–52 (Bankr.N.D.Ill.1996) (expressly indicating that its holding would not be affected by a requirement that the landlord institute an action to obtain possession prior to termination of the lease).[5]

■ *Issues in dispute; due process.* As discussed above, under Illinois law, the right of a tenant to possession of leased property terminates if (1) the tenant defaults in the payment of rent under the lease, (2) the landlord serves the required notice of default, (3) the tenant does not pay the defaulted rent within the required time, and (4) the landlord files an action to obtain possession. At any point in this process or even after the termination, the landlord can waive the default. This legal framework may give rise to any number of disputes between the parties. After a landlord files an action seeking possession of property for default in rent, alleging proper demand and failure of the debtor to pay within the period specified by the demand, the debtor might respond (a) that no rent was ever in default, (b) that the landlord did not properly serve a required notice, (c) that the tenant did tender payment of the amount demanded, or (d) that the landlord had waived the default. If the tenant prevailed on any of these issues, the lease would not be found terminated.[6]

---

4. Even after filing an action for possession, the landlord could waive the tenant's default by abandoning or dismissing the action and accepting payment from the debtor under the lease. *See Chicago Hous. Auth. v. Taylor,* 207 Ill.App.3d 821, 824–25, 152 Ill.Dec. 730, 732–33, 566 N.E.2d 417, 419–20 (1990) (finding no waiver because the landlord did not accept rental payments after filing a forcible action). However, the court in *Robinson* made it clear that the possibility of a landlord not pursuing the rights that flow from lease termination does not negate the fact that a termination has taken place. 54 F.3d at 322 n. 2.

5. Two decisions cited by the court in *Williams* in support of its holding as to the time of termination do not deal with termination for default in rent, and thus do not assist in the interpretation of 735 ILCS 5/9–209, the five-day notice provision that is dispositive here. *Stride v. 120 West Madison Bldg. Corp.,* 132 Ill.App.3d 601, 87 Ill.

Dec. 790, 477 N.E.2d 1318 (1985) (termination based on a lease clause dealing with sale of the underlying property); *Steffen v. Paulus,* 125 Ill. App.3d 356, 80 Ill.Dec. 675, 465 N.E.2d 1021 (1984) (termination pursuant to a lease clause allowing annual cancellation).

6. These issues can be complex. For example, the Illinois courts have held that a lease may waive the requirement of a demand for rent in the event of default, but that this waiver is itself waived if a demand is actually given. *Avdich v. Kleinert,* 44 Ill.App.3d 320, 322–23, 3 Ill.Dec. 1, 2, 358 N.E.2d 1, 2 (1976), *aff'd,* 69 Ill.2d 1, 12 Ill.Dec. 700, 370 N.E.2d 504 (1977). Whether a particular act of a landlord constitutes a waiver may be difficult to determine—compare the majority and dissenting opinions in *Midland Management Co. v. Helgason,* 158 Ill.2d 98, 196 Ill. Dec. 671, 630 N.E.2d 836 (1994) (dealing with the question of whether a landlord waives a default in rent by accepting government assis-

■ Where there is a bona fide dispute regarding any of the predicates for termination of a lease, it would not be appropriate for a bankruptcy court simply to declare the lease terminated without a hearing. A decision by another judge of this court, *In re Brown*, No. 95 B 16825, slip. op., 1995 WL 904913 (Bankr.N.D.Ill. Dec. 19, 1995), raises this concern. *Brown* arose in a situation where the debtor did have bona fide arguments that her lease should not be considered terminated, even though she did not timely pay the defaulted rent after receiving her landlord's demand. *Id.*, slip op. at 7. The court found that the debtor's right to present these arguments meant that the debtor still had "legal recourse," and so the lease had not terminated under the second part of the *Robinson* test. *Id.*, slip op. at 8. Brown asserts that the alternative to allowing assumption of the lease is to hold "that the moment the Landlord filed his suit for possession, Illinois law stripped the Debtor of her property rights without minimum due process protections." *Id.*

The *Brown* analysis is not persuasive. Illinois law provides a forum, fully in conformity with due process, to resolve any disputes about whether a tenancy has terminated. *In re Williams*, 201 B.R. 948, 950–51 (Bankr. N.D.Ill.1996) (describing the due process accorded by the Illinois Forcible Entry and Detainer Act). However, simply because there is a dispute about termination hardly means that a termination has not occurred.[7] If the prerequisites to lease termination have all actually occurred, even though the tenant disputes it, the lease is in fact terminated.

■ *The proper forum for determining termination of tenancy.* The present case, like *Brown*, raises a bona fide question about whether the lease terminated prior to the filing of the bankruptcy case. Linda Finkley argues (1) that she had grounds for not paying her rent prior to the time that the CHA filed its demand, (2) that by entering into an agreed order continuing her lease, the CHA waived its right to pursue termination based on that demand, and (3) that her failure to comply with the agreed order was due to a theft, and therefore excusable. These arguments may be questionable, in light of the provision in the agreed order that appears to require an award of possession to the CHA if Finkley fails for any reason to pay the amounts called for by the order. Nevertheless, as noted above, the law regarding notice and waiver with respect to Illinois leases is complex, and the parties have not yet fully addressed Finkley's arguments.

The question ultimately raised by the CHA's motion for relief from the automatic stay is whether those arguments should be determined by this court or by the state court presiding over the CHA's pending forcible action. Certainly, this court should not determine this dispute in the context of a motion for relief from the automatic stay. As the Seventh Circuit pointed out in *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1231–32 (7th Cir.1990), motions for relief from stay are expedited, summary proceedings. They are intended to determine whether the interest of a creditor in property of a bankruptcy estate is adequately protected, whether the estate has any equity in the property, and whether the property is necessary for an effective reorganization. 11 U.S.C. § 362(d). Thus, *Vitreous Steel* holds that a bankruptcy court should not determine disputes over the extent and validity of a

tance payments). Moreover, other legislation may impact on the notice issue. For example, federal law requires a 14-day notice prior to terminating a public housing lease for nonpayment of rent, 42 U.S.C. § 1437d(*l*)(3)(B), and an ordinance of the City of Chicago prohibits the waiver of statutory notice periods, Chicago Municipal Code § 193.1–14(d) (amended September 8, 1996), cited and discussed in *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill.App.3d 260, 268, 217 Ill.Dec. 1, 6, 666 N.E.2d 670, 675 (1996).

7. As the *Williams* decision points out, the predicate for a forcible action is that the landlord has a present right to possession. 201 B.R. at 951–52. *See Newport Condominium Ass'n v. Talman Home Fed. Sav. & Loan Ass'n*, 188 Ill.App.3d 1054, 1058, 136 Ill.Dec. 612, 614, 545 N.E.2d 136, 138 (1989) ("It is well established that an action for forcible entry and detainer is purely possessory and the immediate right to possession is all that is involved."). Since the landlord only has a right to possession after termination of tenancy, that termination must take place no later than the filing of the action.

**104**

creditor's lien in the context of a motion for relief from stay. 911 F.2d at 1232. As long as the creditor has a colorable claim to an interest in the estate's property, the court should simply determine the issues relating to adequate protection, equity, and necessity for reorganization. If relief from stay is indicated on these bases, then the court should grant the relief, and allow the debtor to contest the creditor's lien rights in another forum, providing for fuller adjudication. *Id.* (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 344 (1977)).

Similarly in the present case, the court should not determine the extent of Finkley's property interests in a motion for relief from stay. Such a summary proceeding should be limited to determining, as the court has already done, that the property at issue is adequately protected (since Finkley is making payments for current rent), and that it is necessary for her reorganization.[8] Of course, if there were no genuine dispute that Finkley lacked any assumable interest in her apartment, it would be proper to grant relief from stay, as was done in *Robinson. Cf. In re Quality Electronics Ctrs, Inc.,* 57 B.R. 288, 290 (Bankr.D.N.M.1986) (court determines whether creditor has a colorable claim to lien in proceedings on relief from stay motion). However, since Finkley has at least a colorable claim to an assumable interest in her apartment, relief from stay should not be granted, and the question of lease termination must be determined in another context.

In the ordinary course of this bankruptcy case, the context in which the termination of Finkley's lease would be determined is the confirmation hearing. As noted above, Section 1322(b)(7) allows a Chapter 13 plan to assume only "unexpired" leases. If the CHA wished to do so, it could object to confirmation on the ground that Finkley's lease was expired, and that issue would have to be determined before the plan could be confirmed.

However, the gist of the CHA's motion for relief from stay is a desire to have the question of lease termination decided by the state court presiding over its forcible action. Accordingly, this court invited the parties to address the question of whether abstention might be appropriate here. *See Carver v. Carver,* 954 F.2d 1573, 1579 (11th Cir.1992), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992) ("The court may abstain upon request of a party or sua sponte."); *St. Vincent's Hospital v. Norrell (In re Norrell),* 198 B.R. 987, 995 n. 6 (Bankr.N.D.Ala.1996) (same). After considering the parties' briefs on this issue, the court finds that it would be a proper exercise of its discretion to abstain.

Two different types of abstention are specified by the statute that defines bankruptcy court jurisdiction, 28 U.S.C. § 1334. Section 1334(c)(2) provides for mandatory abstention, and Section 1334(c)(1) provides for permissive abstention.

Mandatory abstention is not required here. Pursuant to Section 1334(c)(2), a court must abstain if, among other things, the dispute at issue is "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." This requirement limits mandatory abstention to noncore proceedings—those that do not arise under or in a bankruptcy case. *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.),* 86 F.3d 482, 497 (6th Cir.1996) ("For mandatory abstention to apply, a proceeding must ... be a non-core proceeding."). A proceeding to assume a lease, since it arises only in the context of bankruptcy cases, is a core proceeding. *In re Texaco Inc.,* 77 B.R. 433, 437 (Bankr.S.D.N.Y.1987); *In re Nexus Communications, Inc.,* 55 B.R. 596, 597 (Bankr.E.D.N.C.1985); *In re Republic Oil Corp.,* 51 B.R. 355, 358 (Bankr.W.D.Wis. 1985).

In contrast, permissive abstention, authorized under Section 1334(c)(1), provides that a court may abstain in the

---

8. *Dale Funding Corp. v. Garner (In re Garner),* 18 B.R. 369, 371 (S.D.N.Y.1982) ("A stay against foreclosure on residential property might be lifted where the debtor's present assets or prospects and the plan would not suffer materially. In most circumstances, however ... such a stay should ordinarily continue in support of the plan of rehabilitation.")

interest of justice, or in the interest of comity with state courts or respect for state law. The Seventh Circuit, in *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 F.3d 1184, 1189 (7th Cir.1993), identified twelve factors to provide guidance to courts when considering permissive abstention.[9] Under these factors, the bankruptcy court should consider whether the state court has an expertise in the disputed area of law, whether the state court is able to adjudicate the issue in a timely fashion, and the degree to which the issue involves bankruptcy matters. Application of these factors should be applied flexibly and no one factor is determinative. *Id.* "At the same time, because section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." *Id.* Here, permissive abstention is plainly called for. The issues related to the termination of Finkley's lease are exclusively issues of fairly complex state law, the matter has already been presented to a state court with expertise in this area, and part of the dispute involves the interpretation of one of that court's orders. There appears to be no likelihood of any substantial delay if the state court, rather than this one, rules on the question of the termination of Finkley's lease. It therefore advances both comity and efficient administration of justice for this court to abstain.

### Conclusion

For the reasons stated above, the motion of the CHA for relief from the automatic stay is denied. However, treating the motion as a request for permissive abstention, this court rules that the question of whether the debtor's lease with the CHA terminated prior to the filing of this bankruptcy case should be determined by the state court presiding over the forcible entry and detainer action filed by the CHA. A separate order to this effect will be entered.

---

9. These factors are: "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. s 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co*, 6 F.3d 1184, 1189 (7th Cir.1993) (citing *In re Eastport Assoc.*, 935 F.2d 1071, 1075–76 (9th Cir.1991) (quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir.1990))).